582 A.2d 1152

**Helen C. FINUCANE, Leila Finucane and Michael Finucane, individually and on behalf of other Area 1 milk consumers and Consumer Education and Protection Association, Petitioners,**

v.

**PENNSYLVANIA MILK MARKETING BOARD, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Sept. 11, 1990.

Decided Nov. 27, 1990.

274

Thomas J. Finucane, Wingerd and Long, Chambersburg,
for petitioners, Finucane, et al.

Irv Ackelsberg, Community Legal Services, Philadelphia, for petitioner, Consumer Educ. and Protection Ass'n.

Thomas M. Crowley, Chief Counsel, Harrisburg, for respondent.

Allen C. Warshaw, with him, Donald A. Tortorice, Duane, Morris & Heckscher, Harrisburg, for intervenor, Pennsylvania Ass'n of Milk Dealers.

Donald F. Copeland, Norristown, for intervenor, Atlantic Dairy Coop.

J. Jackson Eaton, III, Gross, McGinley, LaBarre & Eaton, Allentown, for intervenor, Southeastern Pennsylvania Dairy Ass'n.

Donn L. Snyder, Boswell, Snyder, Tintner & Piccola, Harrisburg, for intervenor, Pennsylvania Food Merchants Ass'n.

Before COLINS and PELLEGRINI, JJ., and NARICK, Senior Judge.

PELLEGRINI, Judge.

The Commonwealth of Pennsylvania, Pennsylvania Milk Marketing Board (Board) files preliminary objections in the nature of a demurrer to the Petition for Review (Petition) brought by the petitioners, Helen C. Finucane, Leila Finucane and Michael Finucane, Individually and on behalf of Other Area 1 Milk Consumers, and Consumer Education and Protective Association (Consumers).

█ The Consumers have filed this action seeking a declaratory judgment regarding the constitutionality of the retail minimum price requirements of the Milk Marketing Law (Law),[1] Act of April 28, 1937, P.L. 417, *as amended,* 31

---

1. This Law, as originally enacted, was known as the Milk Control Board Law, Act of January 2, 1934, P.L. 174. This Act was repealed and replaced by the Milk Control Law, Act of April 28, 1937, P.L. 417, which was subsequently amended by the Milk Marketing Law, Act of July 31, 1968, P.L. 963. Following the enactment of the Sunset Act, Act of December 22, 1981, P.L. 508, *as amended,* 71 P.S. § 1795.7, which mandated a re-evaluation of the legislation, the Board was re-established and the Act further amended by the Act of December

P.S. § 700j–802(4).[2] The Consumers contend that retail minimum price controls of milk are an unconstitutional violation of their substantive due process rights because such price controls are an unreasonable exercise of police power, unduly oppressive, and without a real and substantial relation to the objectives of the Law. They argue that the General Assembly's requirement of a retail minimum price is no longer rationally related to the purposes of the Law due to changes in the milk industry since the Law's enactment in 1934. They argue that retail minimum prices are no longer necessary to maintain supply and price stability for milk. The Board's demurrer to the Consumer's Petition is now before us.[3]

 The party who challenges a legislative enactment bears the heavy burden of rebutting the presumption that the legislation is constitutional. *Consumer Party of Pennsylvania v. Commonwealth,* 510 Pa. 158, 507 A.2d 323 (1986); *Milk Maid Dairy Products Inc. v. Milk Control Commission,* 190 Pa.Super. 410, 154 A.2d 274 (1959). It is well settled that a lawfully enacted statute enjoys a presumption in favor of constitutionality and should not be declared unconstitutional unless it *clearly, palpably* and *plainly* violates the constitutions of the Commonwealth or

21, 1984, P.L. 1278. We will refer to these Acts collectively as the "Law".

**2.** Section 802(4) of the Law provides in pertinent part:

The Board shall fix, by official order ... the *minimum* wholesale and *retail prices,* and may fix, by official order, the maximum wholesale and retail prices, to be charged and received by milk dealers or handlers of milk sold, delivered, handled or co-signed within any milk marketing area of the Commonwealth, wheresoever produced, including milk sold, delivered or co-signed by:

. . . . .

(4) *Stores to consumers,* except for consumption at the store where sold.

31 P.S. § 700j–802(4) (emphasis added).

**3.** Preliminary objections in the nature of a demurrer are to be sustained only where it is clear and free from doubt from the facts pleaded that the pleader will be unable to prove facts legally sufficient to establish a right to relief. *Firing v. Kephart,* 466 Pa. 560, 353 A.2d 833 (1976); *Goodheart v. Thornburgh,* 104 Pa.Commonwealth Ct. 385, 522 A.2d 125 (1987).

United States. *James v. Southeastern Pennsylvania Transportation Authority*, 505 Pa. 137, 477 A.2d 1302 (1984); *Milk Control Commission v. Battista*, 413 Pa. 652, 198 A.2d 840 (1964). Moreover, any doubts as to the statute's constitutionality are to be resolved in favor of sustaining the statute. *Pennsylvania Liquor Control Board v. Spa Athletic Club*, 506 Pa. 364, 485 A.2d 732 (1984); *Milk Control Commission v. Battista; Rohrer v. Milk Control Board*, 322 Pa. 257, 186 A. 336 (1936).

 The General Assembly's exercise of the Commonwealth's police power through the enactment of economic regulation such as the Milk Marketing Law must be respected and "the power of judicial review must not be used as a means by which the courts might substitute its judgment as to public policy for that of the legislature." *Parker v. Children's Hospital of Philadelphia*, 483 Pa. 106, 116, 394 A.2d 932, 937 (1978). The role of the judiciary is not to question the wisdom of the action of a legislative body, but only to see that it passes constitutional muster. *Parker v. Children's Hospital of Philadelphia; Glancey v. Casey*, 447 Pa. 77, 288 A.2d 812 (1972). And so long as a law which purports to be an exercise of police power is not arbitrary, discriminatory, or demonstratively irrelevant to the policy of the legislation, the court has no power to declare it unconstitutional. *Sylvan Seal Milk, Inc. v. Milk Control Commission;* 270 F.Supp. 117 (E.D.Pa.1967); *Milk Control Commission v. Rieck Dairy Division, etc.*, 193 Pa.Superior Ct. 32, 163 A.2d 891 (1960).

Following these principles of deference to legislative action under the exercise of police power, the courts of this Commonwealth have consistently held that the establishment of a minimum price of milk is a valid exercise of police power. In *Rohrer v. Milk Control Board* the Supreme Court held that price controls under the Milk Control Board Law were constitutional because they were neither arbitrary, discriminatory, nor demonstrability irrelevant to the policy of the legislature. Again in *Colteryahn Sanitary Dairy v. Milk Control Commission*, 332 Pa. 15, 1 A.2d 775

(1938), the Supreme Court reaffirmed the constitutionality of the Board's power to fix minimum prices. In *Commonwealth v. Jackson*, 345 Pa. 456, 28 A.2d 894 (1942), the Supreme Court upheld a milk dealer's conviction for selling milk below the minimum retail price.

In *Milk Control Commission v. Rieck Dairy Division, etc.*, the Superior Court reaffirmed the constitutionality of the Law when it upheld a milk dealer's suspension for using an advertising allowance to evade minimum price controls. The Federal District Court for the Eastern District of Pennsylvania upheld the constitutionality of minimum wholesale prices for milk as a reasonable exercise of police power in *Sylvan Seal Milk, Inc. v. Milk Control Commission*. Most recently, the Supreme Court in *Milk Control Commission v. Lily–Penn Food Stores, Inc.*, 434 Pa. 189, 253 A.2d 630 (1969), reaffirmed that the Milk Marketing Law is a permissible constitutional exercise of police power.

Furthermore, the United States Supreme Court has twice upheld the constitutionality of the pricing provisions of the Law. *Penn Dairies Inc. v. Milk Control Commission*, 318 U.S. 261, 63 S.Ct. 617, 87 L.Ed. 748 (1943); *Milk Control Board v. Eisenberg Farm Products*, 306 U.S. 346, 59 S.Ct. 528, 83 L.Ed. 752 (1939). *See also Nebbia v. People of the State of New York*, 291 U.S. 502, 54 S.Ct. 505, 78 L.Ed. 940 (1934) (upholding New York's minimum milk price control law).

However, the Consumers argue that the conditions under which the Law was originally promulgated have changed, causing the legislation to lose its aegis of constitutionality in light of the presently existing facts. *See Flagiello v. Pennsylvania Hospital*, 417 Pa. 486, 208 A.2d 193 (1965); *Flynn v. Horst*, 356 Pa. 20, 51 A.2d 54 (1947). Thus, the Consumers urge us to re-evaluate the Law in light of current conditions.

Since the passage of the original Milk Control Board Law, the General Assembly has reviewed the retail minimum price control provisions of the Law several times. *See* Footnote # 1. The original Law of 1934 contained retail

minimum price controls whereby the Board was required to fix the retail minimum prices charged by stores to consumers. *See* Milk Control Board Law, Act of January 2, 1934, P.L. 174 § 18(B)(4). When this Law was repealed and replaced by the Milk Control Law in 1937, the General Assembly provided an identical provision for the mandatory setting of retail minimum prices. *See* Milk Control Law, Act of April 28, 1937, P.L. 417, § 802(4).

In 1968, the General Assembly amended the Law, changing its name to the Milk Marketing Law. The General Assembly, however, left the provision dealing with mandatory setting of retail minimum prices intact. *See* Milk Marketing Law, Act of July 31, 1968, P.L. 963, § 802(4). Most recently, in 1984, pursuant to the Sunset Act, *See* Footnote # 1, the General Assembly re-established the Board as a Commonwealth agency and amended the Law. The General Assembly again did not delete the retail minimum price provision, although under the mandate of the Sunset Act to re-evaluate the entire legislation. *See* Act of December 21, 1984, P.L. 1278, § 802(4).

■ The General Assembly has thus reconsidered the retail price control provision on numerous occasions when amending the Law. Moreover, in 1984 when mandated by the Sunset Act to re-evaluate and re-establish the powers of the Board, the General Assembly retained this provision. Although aware of the changes in the milk industry, the General Assembly decided that the retail minimum price control provision was necessary for the overall regulatory scheme.

■ Since the General Assembly has intended that the Board shall continue to have the power to set retail minimum prices in light of the changes in the milk industry, we must determine whether such a provision passes constitutional muster. Such constitutional muster does not imply that it is the only way, or the best way, but only that it is rationally related to the scheme the General Assembly is utilizing to address the objectives of the Act. *See Strong v.*

*County of Erie,* 122 Pa.Commonwealth Ct. 461, 552 A.2d 350 (1989).

■ The standard of review to be applied when determining the constitutionality of economic legislation has been articulated in *Martin v. Unemployment Compensation Board of Review,* 502 Pa. 282, 466 A.2d 107 (1983), *cert. denied,* 466 U.S. 952, 104 S.Ct. 2156, 80 L.Ed.2d 541 (1984), where our Supreme Court stated:

The United States Supreme Court has consistently applied only minimal scrutiny to statutory classifications employed in the regulation of economic activity or in the distribution of economic benefits so long as those classifications do not discriminate against "suspect classes". If the statutory classification *bears some rational relationship to a legitimate state end,* it is within the legislative power. (Citations omitted.)

*Martin v. Unemployment Compensation Board of Review,* 502 Pa. at 290–291, 466 A.2d at 111. *See also McGinnis v. Royster,* 410 U.S. 263, 93 S.Ct. 1055, 35 L.Ed.2d 282 (1973); *Commonwealth of Pennsylvania, Department of Public Welfare v. Molyneaux,* 498 Pa. 192, 445 A.2d 730 (1982); *Strong v. County of Erie.*

■ This Court, in determining whether a classification bears a rational relationship to a legitimate state objective, "is free to hypothesize the reasons the legislature might have had for its classifications." *Martin v. Unemployment Compensation Board of Review,* 502 Pa. at 292, 466 A.2d at 111–112. *See also Williamson v. Lee Optical,* 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955); *Malmed v. Thornburgh,* 621 F.2d 565 (3rd Cir.1980), *cert. denied,* 449 U.S. 955, 101 S.Ct. 361, 66 L.Ed.2d 219 (1980).

■ We need not hypothesize a legitimate state objective for one is easily discernable from a review of the Legislative Purpose and Preamble to the Act. The Legislative Purpose states that the regulation and control of the milk industry is "for the protection of the public health and welfare and for the prevention of fraud." 31 P.S.

§ 700j–101. The General Assembly was concerned that consumers would not be ensured of a constant supply of pure, wholesome milk and did not want "a return to the unhealthful, uneconomic, deceptive and destructive practices of the past ..." Preamble to the Act, 31 P.S. § 700j–101. The General Assembly found that milk, as a vital commodity, "is the most necessary human food, vital for production of public health and for the development of strength and vigor ..." Preamble to the Act, 31 P.S. § 700j–101.

In an effort to satisfy these important objectives, the General Assembly developed a complete milk distribution system which regulated the production, transportation, manufacturing, processing, storage, distribution, delivery and sale of various milk products. This system was meant to assure price stability at all levels of the milk industry, since fraud or destructive competition at any one level could adversely effect those at other levels, including the consumers of milk. The purpose of the Law was to prevent a return to the destructive practices of the past.

The General Assembly, in providing for retail minimum price controls to provide stability in the retail milk market, believed a stable supply of milk is ensured when the retailer is assured an adequate return on the sale because the milk industry relies on retailers to distribute their product to the consumers. Since milk remains a vital commodity in Pennsylvania and the General Assembly finds that an adequate supply at a stable price is required for the benefit of the citizens, retail minimum price controls are a rational means to be employed by the General Assembly to achieve that objective.

Therefore, the retail minimum price control scheme provided in the Law cannot be said to be arbitrary, discriminatory or irrelevant to the General Assembly policy. It is rationally related to the objectives of the Law and as such, passes constitutional muster.

Accordingly, the Preliminary Objections of the Board are sustained.

282

## ORDER

AND NOW, this 27th day of November, 1990, the Preliminary Objections of the Pennsylvania Milk Marketing Board are sustained, and the action is dismissed.