## Pap's A.M. v. City of Erie

338

C.P. of Erie County, no. 60059-1994.

*Philip B. Friedman,* for plaintiff.
*Gregory A. Karle* and *Gerald J. Villella,* for defendants.

LEVIN, *J.,* January 18, 1995—Before the court at this time is plaintiff's request for a permanent injunction enjoining the City of Erie from enforcing ordinance 75-1994.

## FINDINGS OF FACT

(1) The plaintiff is Pap's A.M. t/d/b/a Kandyland, with a principal place of business located at 1402 State Street, Erie, Pennsylvania.

(2) The defendants are the City of Erie, Joyce A. Savocchio, Mayor, Chris E. Maras, Mario S. Bagnoni, Robert

C. Brabender, Denise Robinson, and James N. Thompson, all members of the City Council for the City of Erie.

(3) Pap's A.M. is located in a commercial area of the city and provides adult entertainment to its patrons in the form of nude dancing.

(4) Pap's A.M. does not serve alcoholic beverages; however, patrons are invited to and encouraged to bring such beverages into the premises.

(5) On September 28, 1994, the City Council of Erie enacted ordinance 75-1994. The ordinance, in relevant part, reads as follows:

"NOW THEREFORE, BE IT ENACTED BY THE COUNCIL OF THE CITY OF ERIE, PENNSYLVANIA AS FOLLOWS:

Section 1. Article 711 of the Codified Ordinances of the City of Erie (Indecency and Immorality) is hereby repealed and replaced in its entirety by a new article 711, entitled Public Indecency, to read as follows:

(1) A person who knowingly or intentionally, in a public place:

(a) engages in sexual intercourse

(b) engages in deviate sexual intercourse as defined by the Pennsylvania Crimes Code

(c) appears in a state of nudity, or

(d) fondles the genitals of himself, herself or another person commits public indecency, a summary offense.

(2) 'Nudity' means the showing of the human male or female genital, pubic area or buttocks with less than a fully opaque covering; the showing of the female breast with less than a fully opaque covering of any part of the nipple; the exposure of any device, costume, or cov-

ering which gives the appearance of or simulates the genitals, pubic hair, natal cleft, perineum anal region or pubic hair region; or the exposure of any device worn as a cover over the nipples and/or areola of the female breast, which device simulates and gives the realistic appearance of nipples and/or areola.

(3) 'Public Place' includes all outdoor places owned by or open to the general public, and all buildings and enclosed places owned by or open to the general public, including such places of entertainment, taverns, restaurants, clubs, theaters, dance halls, banquets halls, party rooms or halls limited to specific members, restricted to adults or to patrons invited to attend, whether or not an admission charge is levied.

(4) The prohibition set forth in subsection 1(c) shall not apply to:

(a) Any child under 10 years of age; or

(b) Any individual exposing a breast in the process of breastfeeding an infant under 2 years of age.

(5) In addition to the specific penalties provided in this ordinance, it is hereby declared that any building, portion of a building, or enclosed place regularly used for the prohibited display of public nudity is a public nuisance, subjecting the owner, proprietor or other operator thereof to any and all actions authorized by the Commonwealth of Pennsylvania for the abatement of public nuisances, including, but not limited to the procedures set forth in article 712 of the Codified Ordinances.

(6) CONSTRUCTION AND SEVERABILITY—It is the intention of the City of Erie that the provisions of this ordinance be construed, enforced and interpreted in

such a manner as will cause the least possible infringement of the constitutional rights of free speech, free expression, due process, equal protection or other fundamental rights consistent with the purposes of this ordinance. Should a court of competent jurisdiction determine that any part of this ordinance, or any application or enforcement of it is excessively restrictive of such rights or liberties, then such portion of the ordinance, or specific application of the ordinance, shall be severed from the remainder, which shall continue in full force and effect.

(7) PENALTY—Whoever violates this ordinance, either by commission of a public indecency, or by the promotion or maintenance of public indecency as property owner, proprietor or manager of a business, shall be guilty of a summary offense, and, upon conviction, shall be sentenced to pay a fine of not more than $1,000, or be imprisoned for not more than 90 days, or both. Each day such violation continues is a separate offense.

Section 2. That all ordinances and parts thereof conflicting herewith be and the same are hereby repealed.

Section 3. That this ordinance shall become effective 20 days after final passage and approval by the mayor."

A copy of the ordinance in its entirety is attached to and made part of this opinion as exhibit A.

(6) The ordinance was approved by Mayor Savocchio on September 30, 1994, with an effective date of October 20, 1994.

(7) On October 14, 1994, Pap's A.M. filed a complaint in equity requesting the court to enter a declaratory judgment declaring the ordinance unconstitutional, illegal and unenforceable. Furthermore, Pap's A.M. requested the

court to enjoin the city from enforcing ordinance 75-1994 and from passing and/or enforcing similar ordinances.

(8) On October 17, 1994, Pap's A.M. filed for a preliminary injunction. This court heard argument on the matter on October 19, 1994. At that time, the city was temporarily enjoined from enforcing ordinance 75-1994 until such time as the court rendered its decision.

(9) At the argument held October 19, 1994, Pap's A.M. presented a videotape of the city council meeting of September 28, 1994, the meeting at which the ordinance was passed. Various members of city council addressed the issue and stated numerous reasons for supporting the ordinance. Among the reasons set forth are the following:

(a) The ordinance had full support of the mayor, the district attorney, and the police;

(b) The ordinance would help define and maintain community standards;

(c) One night club was cited for lewd conduct by the Pennsylvania Liquor Control Board;

(d) There is no right to indecency (akin to no right to gamble);

(e) The ordinance would affirm the community standards as established by the city's founders;

(f) Members of council were elected to help formulate this community's standards;

(g) Ordinances such as 75-1994 are not new or unlike any other community's;

(h) The businesses affected by the ordinance will still be able to provide adult entertainment to its patrons although in a somewhat different form.

(10) Upon the effective date of the ordinance performers of adult entertainment were required to wear "G-strings and pasties."

(11) By order dated October 21, 1994, this court denied Pap's A.M.'s request for a preliminary injunction inasmuch as the court could not determine plaintiff's right to relief was clear.

(12) The court convened a hearing on the permanent injunction on December 21, 1994.

(13) At the final hearing held December 21, 1994, Bill Morton, a representative of the Erie Playhouse and Road-house Theater, was allowed to address the court (both parties agreed to allow Mr. Morton to speak before the court). Mr. Morton spoke to the chilling effect ordinance 75-1994 would have upon the theatrical community. He also noted that while he appreciated the city's assurances that theatrical groups were not subject to the ordinance, the ordinance as written imposes governmental standards in the community and is subject to variant interpretation.

(14) The play "Equus," which featured frontal nudity, did appear in the City of Erie in October and November 1994, after passage of the ordinance.

## DISCUSSION

Before the court attempts to analyze the underlying facts of this case as they relate to the applicable law, the court would remind the parties of the purpose of this case. It is not to reveal the personal opinions of one man. If that were the case, since nude dancing does not meet with the court's approval, its task would be much easier, for the court would just concur with the

city. Nevertheless, the role of this judiciary is not to question the wisdom of the actions of a legislative body. The court's responsibility is only to see that legislation passes constitutional muster. *Finucane v. Pennsylvania Milk Marketing Board,* 136 Pa. Commw. 272, 582 A.2d 1152 (1990).

One would hope modern society sees its judges as examining issues from all angles, balancing objectives among the various interests, applying fundamental principles neutrally, and seeking to attain a delicate balance between majority rule and the basic rights of the individual. Aharon Barak, *Judicial Discretion* (1989).

Initially, the court must address the city's allegation that Pap's A.M. lacks standing to challenge the ordinance. Traditionally, a person who is not adversely affected by the matter he seeks to challenge is not "aggrieved" and therefore has no standing to seek judicial review. *American Booksellers Association Inc. v. Rendell,* 332 Pa. Super. 537, 481 A.2d 919 (1984). This rule has, however, been modified for First Amendment issues. A litigant may challenge the validity of an ordinance on the grounds of overbreadth as it applies to persons not before the court. "[T]he doctrine of overbreadth accords standing by reason of the chilling effect that a particular law might have upon the exercise of First Amendment rights." *Id.* at 555, 481 A.2d at 928. This is so because the very existence of the statute may cause others not before the court to refrain from constitutionally protected speech or expression. *American Booksellers, supra,* citing *Broadrick v. Oklahoma,* 413 U.S. 601 (1973); *Doran v. Salem Inn Inc.,* 422 U.S. 922 (1975). Among other theories, plaintiff is challenging ordinance 75-1994 on the basis of overbreadth.

Thus, the court finds plaintiff to have standing in which to challenge the city's ordinance. In addition, plaintiff has attained standing by the ordinance itself. The ordinance imposes penalties upon those who promote or maintain public indecency as a property owner, proprietor or manager of a business. Consequently, as the provider of nude adult entertainment, Pap's A.M. is aggrieved by the ordinance upon enactment and enforcement of its provisions.

When a party challenges the constitutionality of an ordinance, he must prove the ordinance to be invalid. See *Dufour v. Maize,* 358 Pa. 309, 56 A.2d 675 (1948); *Patton v. Republic Steel Corp.,* 342 Pa. Super. 101, 492 A.2d 411 (1985). A legislative enactment enjoys a strong presumption of constitutionality and shall not be declared unconstitutional unless it clearly, palpably and plainly violates the Constitution. *Patton, supra* citing *In the Interest of Jones,* 286 Pa. Super. 574, 429 A.2d 671 (1981); *Kirk v. Unemployment Compensation Board of Review,* 57 Pa. Commw. 92, 425 A.2d 1188 (1981); *Singer v. Sheppard,* 33 Pa. Commw. 276, 381 A.2d 1007 (1978). Plaintiff advances three theories in support of his argument that the ordinance is invalid. These are (1) the ordinance violates the First Amendment of both the United States and Pennsylvania Constitutions (the freedom of expression); (2) the ordinance is preempted by 18 Pa.C.S. §5903, the state obscenity statute; and (3) the ordinance violates the equal protection and due process clauses of the federal and state constitutions. The most pivotal argument raised by plaintiff is that the ordinance is overbroad.

The doctrine of overbreadth serves "to invalidate legislation so sweeping that, along with its allowable proscriptions, it also restricts constitutionally protected rights

of free speech, press or assembly." *Black's Law Dictionary,* 1103 (6th ed. 1990). Although the precedential value of *Barnes v. Glen Theatre Inc.,* 501 U.S. 560, 111 S. Ct. 2456 (1991), has been highly debated in this case, both parties would agree the *Barnes* plurality stated nude dancing is expressive conduct within the outer perimeters of the First Amendment. Thus, it is entitled to First Amendment protection. *Id.* See also, *Schad v. Borough of Mount Ephrain,* 45 U.S. 61 (1981). The question then becomes to what degree the legislature may regulate the exercise of a constitutionally guaranteed right.

The parties have cited the court to various decisions in support of their respective positions and the court will address these in turn. In arguing that ordinance 75-1994 is overbroad, Pap's A.M. requests the court to review *Salem Inn Inc. v. Frank,* 364 F. Supp. 478 E.D.N.Y., 1973, *affirmed,* 501 F.2d 18 (2nd Cir. 1974) *affirmed in part and reversed in part in Doran v. Salem Inn Inc.,* 422 U.S. 922 (1975) and *Triplett Grille Inc. v. City of Akron,* no. 93-3418 (6th Cir. Nov. 1994). In *Doran,* the United States Supreme Court held a North Hempstead, New York, ordinance to be overbroad and in violation of the First and Fourteenth Amendments. The challenged ordinance made it unlawful for bar owners and others to permit waitresses, barmaids, and entertainers to appear in their establishment with breasts uncovered or so thinly draped as to appear uncovered. *Id.* at 924. The Supreme Court noted the ordinance not only applies to places which serve liquor, but to other establishments as well. The high court affirmed the grant of a preliminary injunction and adopted the district court's finding that:

"The local ordinance here attacked not only prohibits topless dancing in bars but also prohibits any female from appearing in 'any public place' with uncovered breasts. There is no limit to the interpretation of the term 'any public place.' It could include the theater, town hall, opera house, as well as a market place, street or any place of assembly, indoors or outdoors. Thus, this ordinance would prohibit the performance of the 'Ballet Africains' and a number of other works of unquestionable artistic and socially redeeming significance." *Doran,* 422 U.S. at 933, citing *Salem Inn Inc.,* 364 F. Supp. at 483.

After reviewing *Doran, supra,* it would appear the issue has clearly been decided. Unfortunately, this is not so. *Doran* was decided in 1975, 16 years prior to *Barnes v. Glen Theatre Inc.* wherein the U.S. Supreme Court upheld an Indiana statute which provided the basis for the language in Erie ordinance 75-1994. In *Barnes,* Chief Justice Rehnquist applied the four-part test of *United States v. O'Brien,* 391 U.S. 367 (1968), in determining the statute to be valid, as applied.[1] The issue of overbreadth, as raised here, was not addressed by the Supreme Court in *Barnes.* The overbreadth argument was originally sustained in *Barnes* at the district court level. Nevertheless, the Court of Appeals for the Seventh Circuit reversed

---

1. The four part test of *United States v. O'Brien, supra,* will uphold a government regulation if (1) it is within the constitutional power of the government, (2) it furthers an important or substantial government interest, (3) the governmental interest is unrelated to the suppression of free expression, and (4) the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest. *Barnes, supra,* 111 S. Ct. at 2461.

this decision, citing previous litigation with respect to the statute in the Supreme Courts of Indiana and the United States as precluding such a challenge. *Barnes* 111 S. Ct. at 2459. The overbreadth doctrine has successfully been argued in *Triplett Grille Inc. v. City of Akron*, no. 93-3418 (6th Cir. 1994), *Triplett II*. Although the facts giving rise to the enactment of an ordinance differ from the case at bar, the ordinances are virtually identical in what is prohibited. The circuit court thoroughly examined the *Barnes* decision and agreed with the district court of *Triplett Grille Inc. v. City of Akron*, 816 F. Supp. 1249 (N.D. Ohio 1993) *Triplett I*, that Justice Souter's concurring opinion in *Barnes* offered the narrowest grounds upon which the decision rested. Therefore, it is this analysis which the courts must follow. *Triplett II* at 5.[2]

Justice Souter's opinion in *Barnes* concentrated on the secondary effects (*i.e.,* prostitution) motivation in passage of the ordinance. Justice Souter's concurrence recognized *Renton v. Playtime Theatres Inc.,* 475 U.S. 41 (1986), wherein the U.S. Supreme Court held legislation seeking to combat the secondary effects of adult entertainment properly furthers the governmental interest of protecting society. *Id.* Justice Souter opined that a state may not be required to litigate secondary effects in every case.

---

2. In *Marks v. United States,* 430 U.S. 188 (1977), it was held that where there is no clear majority of the court, the holding of the court may be viewed as the position taken by those who concurred in the judgment on the narrowest grounds. *Id.* Since *Barnes v. Glen Theatre, supra,* was a plurality decision, lower courts are obligated to focus their attention on the narrowest grounds offered in support of the decision.

Legislatures may rely on outside studies to support the contentions of secondary effects. *Barnes, supra.* The district court in *Triplett I* followed the secondary effects rationale, but determined the Akron ordinance invalid because there was no evidence the legislature considered secondary effects in the enactment of the ordinance. *Triplett I, supra.* This was not, however, the only basis on which the district court invalidated the ordinance. The district court went on to discuss the far-reaching nature of the ordinance and found:

"Inasmuch as adult entertainment such as nude dancing is afforded some degree of constitutional protection, it stands to reason that other types of artistic expression reached by the breadth of Akron's law will be afforded even greater First Amendment protection. The impact of Akron's law goes significantly beyond its only legitimate sweep, combatting the secondary effects of adult entertainment. Finally, it is highly improbable that an itinerant dance or theatrical company seeking to perform an artistic or cultural exhibition which included nudity would undertake the costly and time-consuming burden of federal litigation necessary to perform in Akron. For all of these reasons, Akron's ordinance is found to be substantially overbroad and plaintiff must be permitted to challenge the statute on behalf of others as well as on their own behalf. To hold otherwise will allow the city to chill valuable First Amendment speech." *Triplett I* at 1257.

On appeal to the sixth circuit, the district court was affirmed. This affirmation came despite the circuit court's conclusion that the district court erred in ruling the Akron

ordinance, as applied, was unconstitutional on the basis that evidence of secondary effects was not present. The circuit court found the district court has placed a burden of proving affirmative evidence of secondary effects on the city when in fact Justice Souter's opinion in *Barnes* does not impose such a burden. *Triplett II, supra* at 14.[3] Nevertheless, the circuit court then went on to state that the city had failed to provide a nexus between nudity and non-adult entertainment (*i.e.,* theater productions) and secondary effects and thus the ordinance was facially overbroad. *Id.* The concern of the circuit court rested upon the fact that the ordinance prohibited all nudity, including live performances with serious literary, artistic or political value. *Id.* at 15. The ordinance, like Erie ordinance 75-1994, made no attempt to regulate those activities associated with undesirable secondary effects. *Id.* As drafted, these ordinances ban expressive conduct not generally associated with crime, sexual assault, and prostitution. *Id.*

This leads the court to the city's argument that the city would not enforce ordinance 75-1994 against theater groups. This raises several concerns for the court. First, while it may be true the present administration has no intentions of enforcing the ordinance against theatrical groups, there is no guarantee future administrations will do the same. This alone lends credence to Pap's A.M.'s argument that those in power cannot impose their moral

---

3. Because the court has found Erie ordinance 75-1994 to be overbroad, the court will not address the secondary effects aspect of the enactment of the ordinance. Following *Barnes* and *Triplett II,* evidence of secondary effects could be shown from outside sources rather than being directly related to the City of Erie.

beliefs on others. At any time, those in power may no longer be holding office, and with incoming legislatures, there would be new and different ideas of what is morally correct for the community. Second, the administration is not responsible for the enforcement of laws; the local police force bears this responsibility. Again, this leaves the enforcement of the ordinance within the total discretion of the police force, which is not bound to follow the administration's policy on non-enforcement against the theatrical community.

In rendering this opinion, the court is mindful of the language of Supreme Court Justice David Souter who had this to say:

"Pasties and a G-string moderate the expression [of nude dancing] to some degree, to be sure, but only to a degree. Dropping the final stitch is prohibited, but the limitation is minor when measured against the dancer's remaining capacity and opportunity to express the erotic message." *Barnes, supra* at 2471.

Conceptually, the court agrees with Justice Souter. *However, since freedom of expression is a right guaranteed by the United States Constitution, the court must be very circumspect and apply stringent rules to be sure the Constitution is not violated.* The First Amendment to the United States Constitution states:

"Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Constitution, Amendment I.

Likewise, in adopting its own constitution, Pennsylvania has provided for the same freedoms. In this Commonwealth,

"... The free communication of thoughts and opinions is one of the invaluable rights of man, and every citizen may freely speak, write and print on any subject, being responsible for the abuse of that liberty. ..." Pa. Constitution, Article 1, Section 7.

The U.S. Constitution provides for the minimum level of protection afforded individual rights; however, a state constitution may provide greater protection. *Western Pennsylvania Socialist Workers v. Connecticut General Life Insurance,* 512 Pa. 23, 515 A.2d 1331 (1986). It has been long recognized that Pennsylvania may afford greater protection to individual rights. *Id.* Article 1, Section 7, is part of Pennsylvania's Declaration of Rights and as such, is seen as a limitation of state powers. *Id.* This provision has been interpreted to act as a guard against the imposition of prior restraints upon the communication of thoughts and opinions. *Id.* Thus, no matter how inspired a statute may be, if it restricts those freedoms which are constitutionally guaranteed, it cannot stand.

Although the court is not bound by the rationale offered in *Triplett II,* the court finds it to be far more persuasive than *Barnes.* The Erie ordinance does not attempt to regulate only those activities associated with secondary harmful effects and does not contain any limiting provisions. Cf. *Cafe 207 Inc. v. St. John's County,* no. 92-390 (M.D. Florida 1994). All nudity is prohibited, despite the city's promises to the contrary. This leaves the statute applicable to other types of protected speech which contain nudity

(*i.e.,* theatrical performances). *Simply stated, the ordinance is overbroad.* While the court has thoroughly examined the *Barnes* decision, it finds *Barnes* offers little guidance. Specifically, the *Barnes* decision does not address the issues presented here and confines the holding of the statute's constitutionality as it is applied.

The court now turns to defendants' argument that the court must sever the ordinance in order to preserve legislation when the provision of an ordinance is found to be unconstitutional. The ordinance itself speaks of construction and severability as follows:

"(6) CONSTRUCTION AND SEVERABILITY—It is the intention of the City of Erie that the provisions of this ordinance be construed, enforced and interpreted in such a manner as will cause the least possible infringement of the constitutional rights of free speech, free expression, due process, equal protection or other fundamental rights consistent with the purposes of this ordinance. Should a court of competent jurisdiction determine that any part of this ordinance, or any application or enforcement of it is excessively restrictive of such rights or liberties, then such portion of the ordinance, or specific application of the ordinance, shall be severed from the remainder, which shall continue in full force and effect." City of Erie ordinance 75-1994.

This provision is akin to 1 Pa.C.S. §1925, entitled Constitutional Construction of Statutes, whereby the legislature has provided where any provision or application of a statute is held invalid, the remainder shall not be affected. 1 Pa.C.S. §1925. This statutory construction provision applies to municipal ordinances as well. *Greenwood Township v. Kefo Inc.,* 52 Pa. Commw. 367, 416 A.2d

583 (1980). Section 1925 further states that where the valid provisions of the statute are so essentially and inseparably connected with and dependent upon the void provision, it cannot be presumed the General Assembly would have enacted the remaining valid provisions without the void one. 1 Pa.C.S. §1925. See also, *Stoner v. Presbyterian University Hospital,* 609 F.2d 109 (3rd Cir. 1979). While it is true that legislation enjoys the presumption of constitutionality, see *Latella v. Commonwealth Unemployment Compensation Board of Review,* 74 Pa. Commw. 14, 459 A.2d 464 (1983), it is not without limitation. Legislation is not to infringe upon constitutionally guaranteed rights. The city would have the court strike the provision of the ordinance which prohibits a person from appearing in a state of nudity or have the court determine the ordinance does not prohibit those performances with serious literary, artistic, political or other expressive activity which is not simply commercial erotica. The court finds the provision prohibiting nudity to be interwoven with the entire ordinance so as not to be severable. To remove this provision would certainly place the ordinance within the Pennsylvania Obscenity Statute at 18 Pa.C.S. §5903. Furthermore, without the provision prohibiting nudity, the ordinance would not accomplish what the legislature intended, that being to restrict businesses which provide adult entertainment. In other words, without the anti-nudity provision, the ordinance would serve no purpose. Finally, unlike city council, this court cannot make the determination as to what entertainment provides serious literary, artistic or political expression. As so well stated in *Salem Inn Inc. v. Frank,* 364 F. Supp. 478 (E.D.N.Y. 1973), *affirmed,* 501 F.2d

18 (2nd Cir., 1974) *affirmed in part and reversed in part, Doran v. Salem Inn Inc., supra,* "... while the entertainment afforded by a nude ballet at Lincoln Center to those who can pay the price may differ vastly in content (as viewed by the judges) or in quality (as viewed by critics), it may not differ in substance from the dance viewed by the person who, having worked overtime for the necessary wherewithal, wants some 'entertainment' with his beer or shot of rye." *Id.*

The court has previously expressed its reservations regarding rewriting of the ordinance. Legislation is not this court's duty, rather adjudication is. Furthermore, where legislation is clear and unambiguous in its terms, courts have no authority to add additional language in an attempt to clarify/amend the meaning of the ordinance/statute. *PennDOT Bureau of Driver Licensing v. Porter,* 157 Pa. Commw. 645, 630 A.2d 945 (1993). As such, the court declines the city's invitation to amend the ordinance.

As the court has found ordinance 75-1994 to be unconstitutional, the court will not address Pap's A.M.'s preemption or equal protection arguments, as they are now moot.

Finally, the plaintiff has also asked for attorney fees. Even though the court has made a decision in favor of Pap's A.M., it believes the city enacted this ordinance in good faith as it was relying on case law and in fact, *Triplett II* had not yet been decided by the circuit court when the ordinance was enacted. As such, the court finds that the awarding of attorney fees would be inappropriate.

## CONCLUSIONS OF LAW

(1) This court has jurisdiction over the parties to this action and the subject matter thereto.

(2) Plaintiff has standing in which to bring this action.

(3) The City of Erie ordinance 75-1994, as drafted, violates Article 1, Section 7, of the Pennsylvania Constitution and the First Amendment of the United States Constitution in that the ordinance is overbroad as it prohibits all nudity, whether or not said nudity is related to adult entertainment.

(4) A permanent injunction is hereby granted in favor of plaintiff against defendants and defendants shall be barred from enforcing ordinance 75-1994. The effective date of this permanent injunction is January 18, 1995.

(5) City of Erie ordinance 75-1994 is hereby declared unconstitutional and so shall be stricken.

## FINAL ORDER[4]

And now, to-wit, January 18, 1995, plaintiff's complaint and request for a permanent injunction is hereby granted. Defendants, by and through their agents, are barred from enforcing ordinance 75-1994 and said ordinance is declared unconstitutional. Plaintiff's request for attorney fees is denied.

---

4. The parties to the action have entered into a stipulation allowing for the immediate entry of a final order rather than a decree nisi. This final order comes after a full hearing on the request for a permanent injunction and is done in anticipation of an immediate appeal.

EXHIBIT "A"

## CITY COUNCIL OF ERIE

INTRODUCED BY: MR. THOMPSON
COUNCIL FILE NO. 14,482
OFFICIAL ORDINANCE NO. 75-1994
AN ORDINANCE

Amending article 7 of the Codified Ordinances of the City of Erie (General Offenses) by repealing the present article 711—Indecency and Immorality, and substituting a new article 711 to be titled Public Indecency, prohibiting certain conduct in public places, providing definitions relating thereto, and providing penalties for the violators thereof, including fines, imprisonment, and declaration of public nuisance, as appropriate.

WHEREAS the Council of the City of Erie has, at various times over more than a century, expressed its findings that certain lewd, immoral activities carried on in public places for profit are highly detrimental to the public health, safety and welfare, and lead to the debasement of both women and men, promote violence, public intoxication, prostitution and other serious criminal activity; and

WHEREAS, council, by various enactments of general offenses of article 711 and 712, as well as amendments to the zoning ordinance, has expressed its intention to limit or restrict such lewd immoral activities, to provide penalties for violations thereto and, in appropriate cases to declare the locations of such activities to be a public nuisance subject to abatement; and

WHEREAS, council is fully aware of and fully respects the fundamental constitutional guarantees of free speech and free expression and realizes that restrictions of such freedoms must be carefully drafted and enforced so that speech and expression are not curtailed beyond the point at which it is essential to further the city's interest in public health, safety and welfare; and

WHEREAS, over the years, various statutes and court interpretations have been enacted and decided, which compel periodic re-evaluation and revision of city ordinances and regulations; and

WHEREAS, the current article 711, Indecency and Immorality, the provisions of which date back as far as the year 1866, is outdated in part and unnecessary in part, and should be entirely replaced with new language consistent with current state and federal law; and

WHEREAS, council specifically wishes to adopt the concept of public indecency prohibited by the laws of the State of Indiana, which was approved by the U.S. Supreme Court in *Barnes v. Glen Theatre Inc.,* 111 S. Ct. 2456 (1991), for the purpose of limiting a recent increase in nude live entertainment within the city, which activity adversely impacts and threatens to impact the public health, safety and welfare by providing an atmosphere conducive to violence, sexual harassment, public intoxication, prostitution, the spread of sexually transmitted diseases and other deleterious effects.

NOW THEREFORE, BE IT ENACTED BY THE COUNCIL OF THE CITY OF ERIE, PENNSYLVANIA AS FOLLOWS:

Section 1. Article 711 of the Codified Ordinances of the City of Erie (Indecency and Immorality) is hereby repealed and replaced in its entirety by a new article 711, entitled Public Indecency, to read as follows:

(1) A person who knowingly or intentionally, in a public place:

(a) engages in sexual intercourse

(b) engages in deviate sexual intercourse as defined by the Pennsylvania Crimes Code

(c) appears in a state of nudity, or

(d) fondles the genitals of himself, herself or another person commits public indecency, a summary offense.

(2) "Nudity" means the showing of the human male or female genital, pubic area or buttocks with less than a fully opaque covering; the showing of the female breast with less than a fully opaque covering of any part of the nipple; the exposure of any device, costume, or covering which gives the appearance of or simulates the genitals, pubic hair, natal cleft, perineum anal region or pubic hair region; or the exposure of any device worn as a cover over the nipples and/or areola of the female breast, which device simulates and gives the realistic appearance of nipples and/or areola.

(3) "Public Place" includes all outdoor places owned by or open to the general public, and all buildings and enclosed places owned by or open to the general public, including such places of entertainment, taverns, restaurants, clubs, theaters, dance halls, banquets halls, party rooms or halls limited to specific members, restricted to adults or to patrons invited to attend, whether or not an admission charge is levied.

We do hereby certify that the above ordinance was finally passed by the City Council on September 28, 1994.

SIGNED September 28, 1994
Attest: September 28, 1994
Chris E. Maras
President of Council
James Klemm
City Clerk

THIS ORDINANCE APPROVED THIS 30th DAY
OF September 1994.
Joyce A. Savocchio
Mayor