Allegheny Intermediate Unit, Petitioner *v.*
Malcolm Jarvis, Respondent.

Argued November 16, 1979, before Judges MENCER, DiSALLE and CRAIG, sitting as a panel of three.

*Thomas M. Rutter, Jr.,* with him, *William C. Andrews, Goehring, Rutter and Boehm,* for petitioner.

*Eugene P. Girman,* for respondent.

OPINION BY JUDGE CRAIG, January 22, 1980:

Petitioner Allegheny Intermediate Unit (AIU) appeals from the order of the Secretary of Education, which reversed the AIU's discharge of respondent, Malcolm Jarvis, for ''persistent and willful violation'' of the school laws of this Commonwealth within the meaning of Section 1122 of the Public School Code of 1949, Act of March 10, 1949, P.L. 30, §1122, *as amended* (Code), 24 P.S. §11-1122.

The AIU had employed Jarvis as a classroom teacher at the Warrendale Youth Development Center, a juvenile detention center. In May of 1977, AIU informed Jarvis that he was being transferred to the Oakdale Youth Development Center, also a detention center, but Jarvis declined to report to Oakdale as ordered by his supervisor. Because of his refusal, Jarvis was charged with the violation above described, and AIU's board, after a hearing, dismissed him.

Jarvis appealed to the Secretary of Education, arguing that he could not be dismissed under Section 1122 of the Code because the transfer order of his supervisor was itself a violation of Section 1202 of the Code, 24 P.S. §12-1202, which provides that ''no

teacher shall teach, in any public school, any branch which he has not been properly certificated to teach." Jarvis contended that his supervisor's order was unlawful because his certification is in mental retardation, and his function at Oakdale would have been to initiate and teach a mathematics program geared toward fulfilling the requirements of a general equivalence diploma (GED) at the secondary school level. The Secretary agreed and reversed the dismissal, ordering that Jarvis be "reinstated", with back pay, "as a teacher of the mentally retarded" at AIU.

AIU argues that Section 1202 is inapplicable to the educational program conducted by it at Warrendale and Oakdale, because neither is a "public school" within the embrace of Section 1202, and that the secretary erred when she applied that section to AIU under the guidance of Section 1926 of the Code, 24 P.S. §19-1926, which provides in part that:

Except as otherwise provided by law, a teacher in a school or of a class organized and supervised by the Department of Public Instruction in an institution wholly or partly supported by the Commonwealth . . . shall enjoy the same privileges, including tenure rights, and be subject to the same laws as a teacher in the public schools of the Commonwealth.[1]

We agree with the Secretary that Section 1202 applies to the AIU functions in this case. Our conclusion is supported not only by Section 1926 above, but also by Section 901-A of the Code, added by the Act of May 4, 1970, P.L. 311, No. 102, §1, 24 P.S. §9-951, which provides for the establishment of intermediate units, and states in part that "[i]ntermediate

---

[1] The powers and duties of the Department of Public Instruction were transferred to the Department of Education by Section 1 of the Act of July 23, 1969, P.L. 181, 71 P.S. §1037.

units shall be part of the public school system of this Commonwealth.''

AIU argues that, because Section 1371 of the Code, 24 P.S. 13-1371, includes all children in detention centers within the definition of ''exceptional children'', detention centers are therefore governed by Section 1372 of the Code, 24 P.S. §13-1372, which AIU claims is a plenary provision for the education of exceptional children, so that detention homes are thus ''otherwise provided for by law'', rendering Section 1926 inapplicable by the terms quoted.

We do not agree that the AIU is thereby disassociated from the public school provisions. Although children in detention homes, whom AIU aggregates as ''institutionalized'' children, are described by Section 1371 as ''exceptional'', for its purposes, we also note that Section 1372(3), 24 P.S. §13-1372(3), entitles children in detention centers to instruction during the period of their confinement, ''even though such children are not exceptional.'' Thus, reading Sections 1371 and 1372 together, we cannot conclude that confinement in a detention facility presumptively establishes that every child is exceptional in the substantive sense, nor that those sections establish a class of ''exceptional children'' to be denominated and treated in the aggregate as ''institutionalized children.'' The more reasonable and consistent conclusion is that the inclusion of such institutionalized children in the Section 1371 definition of ''exceptional'' is just to insure that they are brought to the attention of intermediate units for needed programs, whether or not they are otherwise exceptional.

AIU also argues that the transfer of Jarvis to GED mathematics followed the department's own guidelines, specifically Section VII of Specific Standards for Programs for Children in Detention Homes, found in the department's Standards for the Opera-

tion of Special Education Programs and Services, dated October 12, 1972. That section provides:

A. The teacher shall be certified in:

1. Secondary subjects that are offered as major subject areas of the curriculum.

2. Teachers with certification in teaching the mentally retarded *and who have experience and training on the secondary level* have been found to have many competencies for this teaching assignment. Preference should be given to persons with these competencies. (Emphasis added by us.)

However, the record is clear that Jarvis is not certified in mathematics; further, the secretary has made no finding that Jarvis had "experience and training on the secondary level", nor does the record indicate any teaching experience other than his employment by the AIU. The standard is thus inapposite, and the secretary committed no error in reversing the discharge.

However, we must remand, for clarification and possible revision, the remainder of the Secretary's order, reinstating Jarvis "with back pay and benefits, to his position as a teacher of the mentally retarded" in the AIU (presumably at Warrendale). We note that the Secretary's second finding is that Jarvis' position at Warrendale was as a "teacher in an institutionalized children's program." Following the Secretary's strict view of the certification law and the above analysis of Sections 1371 and 1372 necessary to sustain that view of the Secretary, "institutionalized children's program" is not necessarily the same as a program for the mentally retarded. Although, according to Jarvis' testimony, regular IQ tests indicated that 40 to 60 percent of his former pupils were or "could be classified" as mentally retarded, it apparently was not a program for the men-

tally retarded, a categorization of children which, according to the Secretary's discussion, is adopted "only after specific testing and long deliberation."

The obvious point is that Jarvis's former position in the AIU also may not have been one lawful for his certification, in which case he would not be legally entitled to any compensation for the period following his actual service there.

In addition, the record indicates that the AIU's Warrendale program was changing, so that, even if a Warrendale position fitting Jarvis' certification formerly existed, we do not know that it continued there from the time of his discharge to the present.

Thus, although affirming the Secretary otherwise, we must reverse the reinstatement-with-back-pay portion of the order and remand for specific findings in accordance with this opinion.

ORDER

AND Now, this 22nd day of January, 1980, the order of the Secretary of Education dated October 12, 1978 is affirmed except the portion which reinstates respondent "with back pay and benefits, to his position as a teacher of the mentally retarded in the Allegheny Intermediate Unit", as to which portion the order is reversed and remanded to the Secretary for reconsideration of reinstatement and back pay in accordance with the opinion herein and consistent with specific findings which the Secretary shall make as to (1) whether respondent's last position in the Allegheny Intermediate Unit constituted a "branch" in which respondent was properly certified to teach, and (2) if so, the date to which such position continued to exist; any back pay, if awarded, shall be reduced by the amount of earnings received by respondent from any other source during the period for which back pay is awarded.

The decision was reached prior to the expiration of the term of office of Judge DiSalle.