510 A.2d 922

George D. Lentz and Correctional Instructional Vocational Education Association, PSEA/NEA, Petitioners *v.* Commonwealth of Pennsylvania, Department of Education and Commonwealth of Pennsylvania, State Civil Service Commission, Respondents.

Argued May 12, 1986, before Judges CRAIG and DOYLE, and Senior Judge KALISH, sitting as a panel of three.

*Kimber L. Latsha,* with her, *Betty F. Perry* and *Thomas W. Scott, Killian* & *Gephart,* for petitioners.

*John A. Alzamora,* Assistant Counsel, with him, *Mary M. Rogers,* Chief Counsel, for respondents.

OPINION BY JUDGE CRAIG, June 13, 1986:

The question in this case is whether employees of the state Department of Education who provide teaching services to inmates of the state's correctional institutions are in positions governed by the state Civil Service Act,[1] or instead are in jobs regulated by the Public School Code by virtue of a provision in that Code[2] which embraces every teacher "of a class organized and supervised by the Department of [Education] in an institution wholly or partly supported by the Commonwealth. . . ."

---

[1] Act of August 5, 1941, P.L. 752, §§1-1002, *as amended,* 71 P.S. §§741.1-741-1002.

[2] Act of March 10, 1949, P.L. 30, §1926, *as amended,* 24 P.S. §19-1926.

This action, brought by George Lentz and the Correctional Instructional Vocational Education Association (union), as bargaining representative, on behalf of the department's employees who teach in correctional institutions, is addressed to this court's original jurisdiction and to our appellate jurisdiction as well. The original jurisdiction count, an action for declaratory judgment, and the appellate count, seeking to review the State Civil Service Commission's determination that the employees are within the state civil service, are consolidated for decision.

Because this case centrally involves statutory construction, we first set forth the salient provisions of the two statutes involved. As a basis for claiming that the Civil Service Act excludes these teachers from state civil service, the union cites section 3(d)(7) of that Act, 71 P.S. §741.3(d)(7), which provides that the "Classified service" within the state civil service system includes all Department of Education positions with the exception of positions expressly excluded. That subsection states:

(d) 'Classified service' includes:

. . . .

(7) All positions now existing or hereafter created in the Department of Education, including positions in the Vocational Education Management Information Systems *and excluding* the presidents, faculty members and student employes of the State colleges, the heads and *faculty members of the department's other educational institutions* and excluding also county superintendents, assistant county superintendents and supervisors of special education. . . . (Emphasis added.)

Alongside that provision, the union also cites section 1926 of the Public School Code, 24 P.S. §19-1926, which reads:

It shall be within the jurisdiction of the Department of Public Instruction to organize and to supervise schools and classes according to the regulations and standards established for the conduct of schools and classes of the public school system in the Commonwealth in all institutions wholly or partly supported by the Commonwealth which are not supervised by public school authorities. Schools and classes so established in wholly State-owned institutions shall be financed by the department of the State government having jurisdiction and control of such institutions. *Except as otherwise provided by law, a teacher in a school or of a class organized and supervised by the Department of [Education] in an institution wholly or partly supported by the Commonwealth,* teachers in the Pennsylvania State Oral School for the Deaf, teachers in the Thaddeus Stevens Trade School and teachers in the Scotland School for Veterans' Children *shall enjoy the same privileges, including tenure rights, and be subject to the same laws as a teacher in the public schools of the Commonwealth.* (Emphasis added.)

By stipulation, the parties have established the undisputed factual background pertinent here. In the ten adult state correctional institutions in Pennsylvania under the control of the Department of Corrections, the Department of Education since 1974 has had the responsibility for making educational services available to a total community of 14,000 inmates, all of whom are eligible for educational services regardless of age. Inmates below the age of twenty-one constitute seven to nine percent of the total.

The petitioner union's collective bargaining agreement governs the tenure and benefits of 250 Adult

Corrections Education Specialists, of whom 100 are full-time and 150 are part-time. They provide general education development (GED) programs, adult basic education, vocational instruction and some post-secondary education, serving as teachers, librarians, counselors and job placement specialists.

The Department of Education prefers but does not require that they have teaching certificates; difficulty in attracting teachers with certificates has centered upon the vocational trade instructors. For certification, the Department of Education recognizes the service of provisionally certified teachers to the extent that such service involves the teaching of inmates below the age of twenty-one and meets other criteria.

Since July of 1978, the Department of Education has subjected these teachers to performance evaluations in ratings under the same systems which apply to employees in classified civil service.

Since July of 1974, these teachers have not provided the educational programs in the state juvenile confinement facilities, for which the Department of Education contracts with local school districts and intermediate units to provide educational programs, as this court noted in *Allegheny Intermediate Unit v. Jarvis,* 48 Pa. Commonwealth Ct. 636, 410 A.2d 389 (1980).

With reference to these facts, the union's central contention is that the two statutory provisions quoted above should be treated as being in *pari materia,* 1 Pa. C. S. §1932, by reading the Public School Code as covering these teachers because each of them serves in "a class organized and supervised by the Department of [Education] in an institution wholly or partly supported by the Commonwealth . . . ," and concomitantly by reading the Civil Service Act to exclude these teachers from its coverage as "faculty members of the department's other educational institutions. . . ."

The Commonwealth, on the other hand, argues that the Public School Code provision is expressly subject to what is "otherwise provided by law." Thus, the Commonwealth contends, even though each of these teachers literally functions within "a class organized and supervised by the Department of [Education] . . . in an institution wholly or partly supported by the Commonwealth," the Civil Service Act does provide otherwise, by placing all positions of that department under state civil service, with the sole pertinent exception being those teachers who are faculty members in other educational institutions of *that* department, the Department of Education—not these teachers who are "faculty members" only in institutions of the Department of Corrections.

As the applicable principle of interpretation, the Commonwealth relies upon 1 Pa. C. S. §1933, which provides that, whenever general statutory provisions and special statutory provisions are in conflict, the special or more narrow provision prevails. According to the Commonwealth, the Public School Code provision, with its except-as-otherwise-provided phrase and its applicability to all teachers, constitutes the general provision, while the Civil Service Act subsection, pertaining only to Department of Education employees, is the narrower special provision and therefore the one which prevails.

Further, the Commonwealth argues that the absence of uniformly total certification of these teachers differentiates them from teachers covered by the Public School Code, as to whom certification is the norm under sections 1201-1212 of the Public School Code, 24 P.S. §§12-1201—12-1212. Finally, the Commonwealth points out that these teachers are not within any educational institution having a board of directors designed to administer the tenure and discipline provisions of the Public School Code sections 1121-1132, 24 P.S. §§11-

1121—11-1132, but are directly subordinate to the Secretary of Education. Because the Public School Code contemplates that disciplinary decisions by the immediate superiors of teachers are subject to review by the Secretary of Education, Public School Code §1131, 24 P.S. §11-1131, the Commonwealth contends that applying those provisions to teachers who function directly under the Secretary of Education would be anomalous.

The union, in contrast, points to Reorganization Plan No. 3 of 1977, section 2 of which, at 71 P.S. §757-3, reads as follows:

> Section 2. The power and duty to finance schools and classes established by the Department of Education in State Correctional Institutions, as set forth in Section 1926 of the act of March 10, 1949 (P.L. 30, No. 14), known as the 'Public School Code of 1949,' are hereby transferred from the Department of Justice to the Department of Education.

The union brief views that provision as strong evidence that teaching by employees of the Department of Education in state correctional institutions is governed by the Public School Code.

However, that reference in the Reorganization Plan provision narrowly applies to the power and duty to *finance* classes in correctional institutions and thus relates to the second sentence of Public School Code §1926, which provided for the financing of educational programs in state institutions by the department having control of the institution (here the Department of Corrections), a responsibility transferred by the Reorganization Plan to the Department of Education. The Reorganization Plan terms contain nothing which relates to the personnel provisions of the Public School Code.

Full study of the excellent briefs and arguments presented by both sides in this case, together with a

careful reading of the two pertinent statutory provisions, indicates that the proper approach is to consider first the Civil Service Act provision which, as the general rule, places all Department of Education employees under state civil service, excluding only those teachers who are faculty members of *other educational institutions of the Department of Education.* That reference to "faculty members" indicates strongly that the exclusion deals with faculty members within the state's university system, rather than with the teachers involved in this case.

Because the adult prisons are institutions as such, but are correctional institutions and not educational ones, the educational programs supplied by these teachers cannot accurately be regarded as "other educational institutions" of the Department of Education.

After thus pursuing the literal terms of the Civil Service Act, the inapplicability of section 1926 of the Public School Code to these teachers follows. Although these teachers do function under the supervision of the Department of Education in a Commonwealth institution, the regulation of their selection, tenure and discipline is "otherwise provided by law"—that is, by the Civil Service Act provision which applies to their department in residuary terms.

We agree that the organizational structure in which they serve does not match the organizational concepts contemplated by the Public School Code for the administration of its selection, discipline and tenure provisions. The existence of that mismatch tends to confirm the correctness of the statutory construction conclusion which we are compelled to reach.

Because our conclusion is that the Commonwealth's position must prevail as to both the appellate and original jurisdiction counts, there is no need to pursue the Commonwealth's further claim that the state Civil Serv-

ice Commission's determination did not constitute an adjudication amenable to appellate review.

This court's order will, accordingly, grant summary judgment for the Commonwealth parties with respect to the original jurisdiction count and affirm the determination of the State Civil Service Commission under the appellate count.

## ORDER

NOW, June 13, 1986, respondents' motion for summary judgment is granted and petitioners' like motion is denied, with respect to the original jurisdiction count; and the State Civil Service Commission's determination of September 11, 1984 is affirmed, with respect to the appellate jurisdiction count.