ASSOCIATED WHOLESALERS,
INC., Petitioner,

v.

The COMMONWEALTH of Pennsylvania, DEPARTMENT OF REVENUE and Robert A. Judge, Sr., Secretary, Respondents.

Commonwealth Court of Pennsylvania.

Argued June 7, 2000.

Decided July 9, 2001.

Reargument Denied Aug. 7, 2001.

Robert J. Tribeck, Harrisburg, for petitioner.

Joel M. Ressler, Harrisburg, for respondents.

Before DOYLE, President Judge, COLINS, Judge, McGINLEY, Judge, SMITH, Judge, PELLEGRINI, Judge, FRIEDMAN, Judge, and FLAHERTY, Judge.

FLAHERTY, Judge.

Associated Wholesalers, Inc. (AWI) petitions for review of the December 13, 1999, adjudication of the Department of Revenue

(Department) which denied AWI's petition to establish a lower cost of doing business in accordance with Sections 202–A and 227–A of what is commonly known as the Pennsylvania Cigarette Sales and Licensing Act (Act)[1]. We affirm.

AWI distributes food and related merchandise to retail food merchant members. AWI's membership is primarily "mom and pop" retail food merchants. AWI was created to enable small, independent food merchants to compete with larger national grocery market chains through the purchase of food and other merchandise in bulk at a lower cost as a cooperative. One of the products sold by the cooperative to its members is cigarettes, which the cooperative purchases from manufacturers outside of Pennsylvania.

AWI petitioned the Department to establish a lower cost of doing business in accordance with Sections 202–A and 227–A of the Act.[2] AWI's petition alleged that its cost of doing business with respect to its sales of cigarettes was 1.14%, much less than the statutorily presumed 4% of the "basic cost of cigarettes".[3] AWI used the following formula in figuring the basic cost of cigarettes to the wholesaler: cost of doing business with respect to the sales of cigarettes to retail dealers (78,719,824)—basic cost of cigarettes (77,828,954) ÷ basic cost of cigarettes (77,828,954) = 1.14% of the basic cost of cigarettes.

On December 13, 1999, the Department denied AWI's petition, concluding that AWI did not establish a lower cost of doing business than the presumed 4% of the basic cost of cigarettes. The Department used the regulations it promulgated in February of 1998 which were codified at 61 Pa.Code § 71 *et seq.* (Regulations) in calculating AWI's basic cost of doing busi-

---

1. Act of April 9, 1929, P.L. 343, *as amended*, added by the Act of July 2, 1993, P.L. 250, *as amended*, 72 P.S. § 202–A and 227–A.

2. "Cost of doing business" is defined in the Act as follows:

   [T]hat amount, as evidenced by the standards and methods of accounting regularly employed in the determination of costs for the purpose of Federal income tax reporting, **for the *total* operation of the establishment for the previous twelve-month period and must include, but shall not be limited to, all direct and indirect costs such as product cost, freight charges, labor costs, cost of equipment, rental and maintenance expenses, cigarette licenses, preopening expenses, management fees, costs, rents, depreciation, selling costs, maintenance expenses, interest expenses, delivery costs, all types of licenses, all types of taxes, insurance, advertising and any central and regional administrative expenses.** (emphasis added).

   72 P.S. § 202–A. The "cost of the wholesaler" is defined in the Act in pertinent part as follows:

   [T]he basic cost of cigarettes to the wholesaler **plus the cost of doing business** by the wholesaler in excess of the basic cost of cigarettes, expressed as a percentage and applied to the basic cost of cigarettes. Any fractional part of a cent in the cost to the wholesaler per carton of cigarettes shall be rounded off to the next higher cent. There shall be determined a separate cost of the wholesaler for sale to retail dealers. In the absence of filing satisfactory proof of a lesser cost of doing business by the wholesaler with respect to sales to retail dealers, the cost of doing business shall be presumed to be four percentum of the basic cost of cigarettes.... (emphasis added).

   72 P.S. § 202–A.

3. The Act defines the term "basic cost of cigarettes" as follows:

   [T]he manufacturer's list price to which shall be added the full face value of any tax which may be required by law, if not already included in the manufacturer's list price. Manufacturer's list price shall mean the gross price of the cigarettes from the manufacturer to the dealer in the quantities stated and shall include any Federal tax, freight or handling charges if not already included.

   72 P.S. § 202–A.

ness. The Department considered all costs in its calculations, not just the costs allocated to AWI's cigarette activity, in reviewing the petition to determine the dealer's cost of doing business.

On December 21, 1999, AWI filed the instant petition for review in the nature of a complaint for declaratory judgment and injunctive relief and in the nature of an appeal. Count I of the petition invoked this Court's appellate jurisdiction, while Counts II–IX arose under our original jurisdiction. On January 10, 2000, we granted the joint motion of the parties to stay counts II–IX until our Court resolves the issues raised in Count I.

■ AWI contends that the Department committed an error of law in denying the petition to establish a lower cost of doing business with respect to the sales of cigarettes to retail dealers, violated AWI's due process and equal protection rights under the United States Constitution, the Constitution of Pennsylvania, and violated the Sherman Antitrust Act in its interpretation of the Cigarette Act.[4]

The Act provides for the licensing of cigarette dealers, cigarette wholesalers, and cigarette retailers. AWI is a dealer and wholesaler of cigarettes, as those terms are defined within the Act. The purpose of the Act is:

(1) To prohibit advertising or offering cigarettes for sale below cost if the intent thereof is to increase the incidence of cigarette usage or to injure, destroy or substantially lessen competition.

(2) To declare such practice to be unfair, deceptive and adverse to the collection of taxes from the sale of cigarettes.

(3) To license cigarette dealers to effect the orderly collection of taxes.

(4) To promote fair competition.

Section 201–A of the Act, 72 P.S. § 201–A.

The Act prohibits sales of cigarettes at less than the cost of the wholesaler.[5] 72 P.S. § 217–A. The Act requires that a wholesaler sell cigarettes at a price equal to "the basic cost of cigarettes to the wholesaler plus the cost of doing business by the wholesaler in excess of the basic cost of cigarettes, expressed as a percentage and applied to the basic cost of cigarettes." 72 P.S. § 202–A. Such amount is to be equal to four percent of the basic cost of cigarettes or a "lesser cost of doing business with respect to sales to retail dealers" may be established by the wholesaler. 72 P.S. § 202–A. If the percentage arrived at by application of such formula is less than the statutory presumption of 4%, a lesser cost of doing business has been established.

The Act directs the Department to adopt and implement Regulations that shall provide a procedure for dealers to prove a cost different from State presumptive costs, including proof of lower costs, filing of petitions, costs allocation, data to be submitted and guidelines necessary to implement this article. 72 P.S. § 227–A.[6]

---

4. Our review of an administrative agency is limited to a determination of whether constitutional rights were violated or an error of law was committed. *York Excavating Co., Inc. v. Pennsylvania Prevailing Wage Appeals Board,* 663 A.2d 840 (Pa.Cmwlth.1995).

5. The Act defines sales at less then cost as follows:

(a) It shall be unlawful:

(1) For any dealer, with intent to injure competitors or destroy or substantially lessen competition or with intent to avoid the collection or paying over of such taxes as may be required by law, to advertise, offer to sell or sell cigarettes at less than cost of such cigarette dealer.

72 P.S. § 271–A(a)(1).

6. 72 P.S. § 227–A provides in pertinent part as follows:

In February of 1998, the Department promulgated the Regulations to comply with the Department's obligations under Section 227–A of the Act. The Regulations define the "cost of the wholesaler" as follows: "The basic cost of cigarettes to a wholesaler, which includes the cost of the stamping agent, plus a markup to cover the wholesaler's cost of doing business, which cost of doing business, in the absence of satisfactory proof of a lesser cost, is presumed to be 4% of the basic cost of cigarettes to the wholesaler." 61 Pa.Code § 71.4. The Regulations then establish a procedure whereby a wholesaler can establish a lower cost of doing business than the statutorily presumed 4% of the basic cost of cigarettes. The Regulations provide in pertinent part as follows:

> The Department will review and evaluate the information provided by the cigarette dealer and will determine whether the dealer's cost of doing business is lower than the presumed cost of doing business in effect at that time.
>
> . . .
>
> In determining whether an applicant/dealer's cost of doing business is lower than the presumed cost of doing business for that particular type of dealer, the Department will divide the applicant's operating expenses for the applicable 12–month period by the applicant's total cost of doing business for that same period.
>
> *Example.* Wholesaler is in the business of selling cigarettes, candy and various food items to retailers throughout the United States. In its application to

sell cigarettes to retailers at a price lower than the 4% presumptive cost of doing business markup, Wholesaler provides the following financial information for the year ending 12/31/XX:

> Total cost of goods sold $575 million
> Total cost of doing business $650 million

> The Wholesaler's operating expenses equal $75 million, which is its **total cost of doing business less its total cost of goods sold. This amount is then divided by Wholesaler's total cost of doing business** ($75 million/$650 million), which equals approximately 11.53%. This percentage represents the wholesaler's actual percentage cost of doing business. Because this percentage is greater than the 4% presumptive cost of doing business markup, the Wholesaler is unable to show that it can sell its cigarettes at a lower cost of doing business and the Department would deny its application. (emphasis added).
>
> . . . .

61 Pa.Code § 76.1(e).

■ The construction of a statute by an agency charged with execution and application of that law is entitled to great weight and should not be disregarded unless it is clear that such construction is clearly erroneous. *Spicer v. Com.*, 58 Pa. Cmwlth. 558, 428 A.2d 1008 (1981). The Regulations are presumed valid until proven otherwise. *Hospital Ass'n of Pa. v. Foster*, 157 Pa.Cmwlth. 363, 629 A.2d 1055 (1993). Where a regulation conflicts with the language of a statute and renders the statute unconstitutional, it will be declared invalid. *Com. v. Pennsylvania School*

---

Regulations shall provide a procedure for dealers to prove a cost different from the State presumptive costs, including proof of lower costs, filing of petitions, cost allocation, data to be submitted and guidelines necessary to implement this article. . . . Authorization by the department for a dealer to sell cigarettes below the established

presumptive minimum prices shall be stated as a percentage and be applied to all levels of cigarette prices in the percentage allowed, and this percentage shall also be applied to any new presumptive minimum prices established by the department during the effective period of the dealer's authorization.

*Boards Association (PSBA),* 545 Pa. 597, 682 A.2d 291 (1996).

The statutory definition of "Cost of the Wholesaler" is stated in pertinent part as follows:

"Cost of the Wholesaler" shall mean the **basic cost of the cigarettes to the wholesaler plus the cost of doing business by the wholesaler in excess of the basic cost of cigarettes, expressed as a percentage and applied to the basic cost of cigarettes.** Any fractional part of a cent in the cost to the wholesaler per carton of cigarettes shall be rounded off to the next higher cent. There shall be determined a separate cost of the wholesaler for sale to retail dealers. In the absence of filing satisfactory proof of a lesser cost of doing business by the wholesaler with respect to sales to retail dealers, the cost of doing business shall be presumed to be four percentum of the basic cost of cigarettes. (emphasis added).

72 P.S. § 202–A.

■ The Act states that the wholesaler must show that its **cost of doing business** with respect to sales to retail dealers in excess of the basic cost of cigarettes is less than 4% of its basic cost of cigarettes. The cost of doing business is defined as the "total operation of the establishment." *See,* 72 P.S. § 202–A; 61 Pa.Code § 76.1. The Department was correct in examining the total costs of all products, as opposed to examining only those costs related to cigarettes. The Regulations are a correct interpretation of the express provisions of the Act.

AWI was not in conformance with the Act, and failed to establish a lesser cost of doing business with respect to the sales of cigarettes to retail dealers. Therefore, we are constrained to affirm the decision of the Department.

■ Next, AWI contends that the Act itself is unconstitutional as applied to the denial of AWI's petition; that the application of the Act violated AWI's due process and equal protection rights. In determining whether the Act is unconstitutional, we look at whether the means utilized by the State bear a rational or reasonable relationship to a legitimate state interest. *Finucane v. Pa. Milk Marketing Board,* 136 Pa.Cmwlth. 272, 582 A.2d 1152 (1990).

■ The Act provides that the wholesaler must charge at least 4% more than their basic cost for cigarettes unless they can show that their actual cost of doing business is less than the presumed 4% cost of the cigarettes. The cost of doing business is defined as the total cost of the operation. This formula is not arbitrary, unreasonable or discriminatory.

In *Oil Well Co. v. Alabama State Department of Revenue,* 350 F.Supp. 416 (M.D.Ala.1971), *affirmed* 468 F.2d 1398 (5th Cir.1972), the Oil Well Company (plaintiff) alleged that the Alabama Unfair Cigarette Sales Act (AUCSA) violated the due process clause because the scope and the purpose of the Act were not a valid exercise of police power, that the 8% cost of doing business was capricious, and the formula for proving a lower cost of doing business was arbitrary. The United States District Court for the Middle District of Alabama, Northern Division (U.S.Dist.Ct.) rejected plaintiffs claims stating that:

Every business enterprise has various overhead expenses which are the natural result of doing business. It is reasonable accounting procedure to characterize this expense as contributing to the cost of each item to the retailer. Certainly the total cost of operation between merchants may vary greatly. In addition, the cost attributable to a particular item will vary from enterprise to enter-

prise, despite the fact that in the aggregate the two businesses might have equal expenses. Thus, in order to accommodate individual differences in cost and at the same time establish some standard for compliance with the law, it is not unreasonable for the state to provide a presumed percentage for overhead. The statute provides the opportunity for the retailer, the one with the access to and understanding of the pertinent records, to demonstrate that a different cost is applicable.

*Id.* at 418.

We agree that the protection of fair and healthy competition in the cigarette market of this state is a legitimate goal of the legislature and one that obviously affects the public welfare. *See Hartsock–Flesher Candy Co. v. Wheeling Wholesale Grocery Co.,* 174 W.Va. 538, 328 S.E.2d 144, 151 (1984). The Act requires a cost figure arrived at by reasonable accounting standards. The Department's method appears to be a reasonable and an enforceable way of allocating overhead costs to a particular item, especially when considering the fact that many costs, such as salaries, cannot be linked directly to one particular item.

Therefore, we find that the Act is not violative of the due process provisions of the United States Constitution or the Pennsylvania Constitution. The protection of the public from unfair business practices which tend to injure competitors and destroy or substantially lessen competition is necessarily a matter affected with the public interest and is a legitimate goal of legislative action. The Act is a legitimate, reasonable means of furthering that legitimate goal.

■ AWI also argues that the Act and Regulations deprive them of equal protection under the law by discriminating against sellers of products other than cigarettes and in favor of wholesalers who sell only cigarettes. The Act and Regulations do not create any classifications. All wholesalers are treated equally, in that they are required to allocate their cost of doing business based upon the total operating costs of the business enterprise and in accordance with reasonable accounting principles. AWI was not denied equal protection under the law.

■ Finally, AWI contends that the Act and the Regulations violate the Sherman Anti–Trust Act, 15 U.S.C. § 1 et. seq. The Sherman Anti–Trust Act prohibits contracts that are in restraint of trade. State regulatory programs are not capable of violating the Sherman Anti–Trust Act. *California Retail Liquor Dealers Association v. Midcal Aluminum, Inc.,* 445 U.S. 97, 102, 100 S.Ct. 937, 63 L.Ed.2d 233 (1980). The Sherman Anti–Trust Act is directed against the "individual and not the state action." *Parker v. Brown,* 317 U.S. 341, 352, 63 S.Ct. 307, 87 L.Ed. 315 (1943). As AWI concedes, a properly applied sales below cost statute furthers the goals of the Sherman Anti–Trust Act. *United States v. National Dairy Products Corp.,* 372 U.S. 29, 83 S.Ct. 594, 9 L.Ed.2d 561 (1963). Thus, as we have determined that the Act as applied by the Department is a proper sales below cost statute, AWI has no claim under the Sherman Anti–Trust Act.

Accordingly, we affirm.

### ORDER

AND NOW, this 9th day of July, 2001, the decision of the Department of Revenue in the above captioned matter is affirmed.

Judge COLINS dissents.