802 A.2d 6 (2002)
PENNSYLVANIA SCHOOL BOARDS ASSOCIATION, INC.; the Cameron County School District, the Butler Area School District, the Mars Area School District and the Pocono Mountain School District, Petitioners
v.
Charles B. ZOGBY, Secretary of Education of the Commonwealth of Pennsylvania; the Pennsylvania Department of Education, Western PA Cyber Charter School, Commonwealth Cyber Charter School, T.E.A.C.H. Charter School, a/k/a Einstein Academy, and the Pennsylvania Virtual Charter School, Respondents.
Commonwealth Court of Pennsylvania.
Argued March 13, 2002.
Decided June 17, 2002.
*7 Michael I. Levin, Huntingdon Valley, for petitioners.
Linda S. Lloyd, Harrisburg, for respondent, C. Zogby.
W. Timothy Barry, Canonsburg, for respondent, Western PA Cyber Charter School.
Howard D. Scher, Philadelphia, for respondent, Einstein Academy.
Kevin M. McKenna, Malvern, for respondent, PA Virtual Charter School.
BEFORE: COLINS, President Judge, and McGINLEY, Judge, SMITH-RIBNER, Judge, PELLEGRINI, Judge, FRIEDMAN, Judge, COHN, Judge, and LEAVITT, Judge.
Opinion by Judge FRIEDMAN.[1]
Charles B. Zogby, the Secretary of Education of the Commonwealth of Pennsylvania (Secretary), and the Pennsylvania Department of Education (Department) (together, Respondents) have filed preliminary objections to the second amended petition for review (petition for review) filed by the Pennsylvania School Boards Association, Inc. (PSBA), the Cameron County School District, the Butler Area School District, the Mars Area School District and the Pocono Mountain School District (collectively, Petitioners).
Petitioners filed their petition for review after the Department sent letters to the school districts stating that the Department would withhold state education subsidies from those school districts that refused to pay tuition bills submitted by "cyber" charter schools (cyber schools). The Secretary eventually deducted $839,665 from numerous school districts after the Western PA Cyber Charter School submitted documentation of unpaid invoices. In the petition for review, Petitioners challenge the Secretary's withholding of subsidies pursuant to the Charter School Law.[2]
*8 Counts I, II and III of the petition for review are addressed to this court's original jurisdiction.[3] In Count I, Petitioners seek an order from this court declaring that cyber schools are illegal, and, therefore, the Department and Secretary have no authority to deduct money from state subsidies to pay cyber schools. In the alternative, Petitioners seek an order declaring that the Department and Secretary may not withhold state subsidies without providing school districts notice and an opportunity to be heard as to whether the cyber schools are acting in compliance with the Charter School Law. In Count II, Petitioners seek to enjoin the Department and Secretary from withholding subsidies to pay cyber schools or, in the alternative, from withholding such funds without providing the school districts notice and an opportunity to be heard. In Count III, Petitioners seek an order in mandamus compelling the Department and Secretary to make all state subsidy payments to the school districts without any deductions for payment to the cyber schools.
In Count IV of the petition for review, Petitioners ask this Court to review in its appellate jurisdiction the decision of the Department and its Secretary to withhold subsidies from the school districts.[4] As relief, Petitioners seek to have this court vacate that decision, compel the Department and its Secretary to pay the withheld subsidies to the school districts and prohibit the Department and its Secretary from withholding subsidies on account of students in cyber schools or, alternatively, prohibit such action until a full and complete hearing is conducted.
Respondents have raised several preliminary objections to the petition for review, including: (1) whether the withholding of subsidies represents the performance of a ministerial duty, rather than an adjudication; (2) whether Petitioners lack standing to bring this action; and (3) whether Petitioners have pleaded facts sufficient to state a cause of action that entitles them to relief.

I. Jurisdiction
The Pennsylvania Supreme Court has held that those matters that the legislature has placed within our appellate jurisdiction under section 763 of the Judicial Code[5] are excluded from our original jurisdiction under section 761 of the Judicial Code.[6]Pennsylvania Department of Aging v. Lindberg, 503 Pa. 423, 469 A.2d 1012 (1983).
*9 In Boyertown Area School District v. Department of Education, 797 A.2d 421 (Pa.Cmwlth., Nos. 2286, 2287, 2640, 2699, 2863, 2864, 2865, 2866, 2883, 2892, 2914, 2915 C.D.2001 & No. 150 C.D.2002) (2002), an en banc panel of this court held that the Secretary's withholding of subsidies constitutes an adjudication subject to the provisions of section 504 of the Administrative Agency Law.[7] Because the Secretary withheld subsidies from school districts without providing an opportunity for a hearing on the matter, we vacated the Secretary's actions, remanded the case and directed the Department to provide an expedited opportunity for the school districts to challenge the deductions. Id. We explained that, before taking action to withhold subsidies otherwise due a school district, the Secretary must determine whether the charter school is operating in compliance with the Charter School Law, by which we meant only whether each claimed student is actually attending the charter school and for what period the student attended. Id. We did not address whether the Secretary was required to determine the legality of the charter school's charter.
Because we held in Boyertown that the Secretary's decision to withhold state education subsidies is an adjudication properly before us in our appellate jurisdiction[8] and because Petitioners may not simultaneously proceed in both our original and appellate jurisdiction, we dismiss Counts I, II and III of the petition for review.[9] Respondents' preliminary objection to Count IV, based on their contention that the withholding of subsidies is not an adjudication, is overruled. Addressing Count IV in our appellate jurisdiction, we vacate the Secretary's withholding of subsidies, remand this case to the Department and direct the Department to provide an expedited opportunity for Petitioners to challenge the deductions. Id.
The only remaining issue is whether, on remand, the Department may determine the legality of the cyber charter schools. For the reasons that follow, we conclude that Petitioners lack standing to challenge the legality of the cyber charter schools, and the Department lacks authority to rule on such a challenge.

II. Standing
Charter schools are established under section 1717-A of the Charter School Law, 24 P.S. § 17-1717-A. After a charter school submits an application for approval to the local board of school directors, the local board must take formal action to approve or deny the application at a public meeting. 24 P.S. § 17-1717-A(e)(4). If an application is denied, the charter school alone may file an appeal with the State Charter School Appeal Board, which then reviews the decision of the local board. 24 P.S. § 17-1717-A(i)(6). If the application is denied or granted by the appeal board, only the charter school and school district whose decision is reversed may file an appeal with this court. 24 P.S. § 17-1717-A(i)(10). Thus, the only *10 agencies given the discretion to be involved in the decision to grant or deny a charter school application under Section 1717-A of the Charter School Law are the chartering school district and the State Charter School Appeal Board. The Secretary and the other school districts are strangers to that process.
In West Chester Area School District v. Collegium Charter School, 760 A.2d 452 (Pa.Cmwlth.2000), appeal granted, 566 Pa. 674, 782 A.2d 552 (2001), we held that those not involved in the statutory process did not have standing to challenge the grant of a charter school application. In that case, residents of adjacent school districts contended that they had standing as taxpayers to intervene in an appeal before the State Charter School Appeal Board challenging West Chester's denial of Collegium's charter. The taxpayers alleged that they had standing because they might be harmed by Collegium's admission of students from their home districts, which would reduce public funds available for their schools. The appeal board reversed the denial of the charter school application by the local school board and denied the taxpayers' petition to intervene. On appeal to this court, we held that the taxpayers did not have standing to intervene because the Charter School Law did not provide for appeals from the grant of a charter by any party other than the charter school and the chartering school district. We also stated that the General Assembly contemplated that charter schools would admit students from outside the school district in which they were located and provided that school subsidy money from the non-chartering school districts go to the charter schools. Collegium Charter School.
In this case, the non-chartering school districts similarly lack standing to challenge the legality of a grant of a charter school application. The General Assembly did not give them any rights to participate in the process; the General Assembly only placed on such school districts the obligation to pay for their students who attend charter schools.
Section 1725-A of the Charter School Law, a provision that provides for the funding of charter schools, authorizes the Secretary to withhold payments when school districts refuse to make these payments but does not give school districts any right to challenge the grant of a charter school application. Subsection (5) of this section provides, in pertinent part, as follows:
Payments shall be made to the charter school in twelve (12) equal monthly payments, by the fifth day of each month, within the operating school year. A student enrolled in a charter school shall be included in the average daily membership of the student's district of residence for the purpose of providing basic education funding payments and special education funding.... If a school district fails to make a payment to a charter school as prescribed in this clause, the [S]ecretary shall deduct the amount, as documented by the charter school, from any and all State payments made to the district after receipt of documentation from the charter school.

24 P.S. § 17-1725-A (emphasis added). Thus, section 1725-A of the Charter School Law merely provides an alternative procedure to insure that a charter school receives funding when a recalcitrant school district refuses to pay.
Moreover, when a school district refuses to pay, the Secretary has no authority to decide that the charter was granted illegally and to decline to withhold payment from the school district on that basis. Nowhere in the Charter School Law is the Secretary given such power, and if the General Assembly *11 wanted to give the Secretary such power and set up an alternative appeal process, it would have done so. Rather, the statute gave the Secretary no discretion as to whether the grant of the charter was proper, vesting sole discretion in the chartering school district and the State Charter School Appeal Board. A contrary construction of the statute would mean that no grant of a charter school would ever be final because a non-chartering school district could always say the charter school was not established in accordance with the Charter School Law or was not carrying out its educational mandate.[10]
Accordingly, on remand, the Department shall not address the legality of cyber charter schools in its hearing to determine whether to withhold subsidies from Petitioners.

III. Legality of Cyber Schools
Even if Petitioners had standing to challenge the legality of cyber charter schools in this or another proceeding, we would conclude that the Charter School Law does not prohibit cyber schools.[11]
Although we cannot say that the General Assembly actually contemplated the creation of cyber schools when it enacted the Charter School Law, the fact that the statute does not specifically identify cyber schools as a special class of charter schools does not mean that the statute prohibits cyber schools. The Charter School Law authorizes the creation of any charter school, as long as the entity complies with the requirements for a charter school set forth in the statute. Based on our reading of the statute, we see no reason why a cyber school cannot meet the statutory requirements.

A. School Location
Section 1722-A(a) of the Charter School Law, 24 P.S. § 17-1722-A(a) (emphasis added), which governs the location of a charter school, provides as follows:
A charter school may be located in an existing public school building, in a part of an existing public school building, in space provided on a privately owned site, in a public building or in any other suitable location.

In other words, although a charter school may be located in a traditional "bricks and mortar" building, the statute allows a charter school to be located in "any suitable location." We believe these words are broad enough to encompass a cyber school.

B. School Site
Section 1702-A of the Charter School Law, 24 P.S. § 17-1702-A (emphasis added), provides, in pertinent part, as follows:
It is the intent of the General Assembly, in enacting this article, to provide opportunities for teachers, parents, pupils and community members to establish and maintain schools that operate independently from the existing school district structure as a method to....
(4) Create new professional opportunities for teachers, including the opportunity to be responsible for the learning program at the school site.... *12 Section 1702-A of the Charter School Law says nothing about teachers providing instruction in the traditional manner in physical classrooms in the old "bricks and mortar" school buildings. Section 1702-A of the Law is about the intention of the legislature to create "new professional opportunities" for teachers, including the opportunity to be "responsible for the learning program at the school site." 24 P.S. § 17-1702-A (emphasis added). A "new" professional opportunity would be the opportunity for a teacher to be responsible for a learning program that would be installed on a cyber school's computer system "at the school site."[12]

C. School Premises
Section 1715-A(5) of the Law states that "[a] charter school shall not provide any religious instruction, nor shall it display religious objects and symbols on the premises of the charter school." 24 P.S. § 17-1715-A(5) (emphasis added). It is apparent that this provision applies only to charter schools that have walls upon which a charter school could display religious objects and symbols. As indicated above, a charter school "may" be located in a building. In such cases, the charter school shall not display religious objects and symbols "on the premises." However, this does not mean that every charter school must be located in a traditional "bricks and mortar" school building.[13]

D. Compulsory Attendance
Section 1715-A of the Law, 24 P.S. § 17-1715-A (emphasis added), provides, in pertinent part, as follows:
(9) A charter school shall provide a minimum of one hundred eighty (180) days of instruction or nine hundred (900) hours per year of instruction at the elementary level, or nine hundred ninety (990) hours per year of instruction at the secondary level. Nothing in this clause shall preclude the use of computer and satellite linkages for delivering instruction to students.

In other words, the legislature explicitly allows for cyber education to fulfill school attendance requirements, and the legislature does not limit the number of days or hours of cyber instruction per year.
Moreover, section 1703-A of the Law defines a charter school as "an independent public school ... in which students are enrolled or attend." 24 P.S. § 17-1703-A (emphasis added). Thus, the legislature has made quite clear that some charter schools are not "attended." Such charter schools simply "enroll" their students and deliver instruction to them via computer and satellite linkages.

ORDER
AND NOW, this 17th day of June, 2002, it is hereby ordered as follows:
1. Counts I, II and III of Petitioners' second amended petition for review are dismissed based on this court's lack of original jurisdiction over the withholding of subsidies by Charles B. Zobgy, Secretary of Education of the Commonwealth of Pennsylvania (Secretary).
2. Respondents' preliminary objection to Count IV of the second amended petition for review is overruled.
*13 3. The Secretary's decision to withhold subsidies is vacated, and this case is remanded case to the Pennsylvania Department of Education (Department) so that the Department can provide an expedited opportunity for Petitioners to challenge the deductions, but without permitting a challenge to the legality of cyber charter schools.
Jurisdiction relinquished.
Concurring opinion by Judge PELLEGRINI.
Concurring and dissenting opinion by Judge SMITH-RIBNER, joined by McGINLEY and COHN, JJ.
Concurring and dissenting opinion by Judge SMITH-RIBNER.
I fully agree with the Majority decision to overrule Respondents' preliminary objection to Count IV of the petition for review, which asserted that withholding of state education subsidies from the School Districts was not an adjudication. See Boyertown Area School District v. Department of Education, 797 A.2d 421 (Pa. Cmwlth. 2002)[1]. I also agree with the decision to dismiss Count II (injunctive relief) and Count III (mandamus relief) of the petition for review.
I dissent, however, from the decision to dismiss Count I of the petition for review seeking declaratory judgment relief and to sustain Respondents' preliminary objection raising Petitioners' lack of standing to file their declaratory judgment action and preliminary objection in the nature of a demurrer for failure of Petitioners to state a claim for relief. The Majority bases its decision on an especially narrow reading of the appeals provision within the Charter School Law, Act of March 10, 1949, P.L. 30, as amended, added by section 1 of the Act of June 19, 1997, P.L. 225, 24 P.S. §§ 17-1701-A17-1732-A, to deny Petitioners standing, and it does not follow the standards for reviewing preliminary objections in the nature of a demurrer. This case is not about whether Petitioners may appeal from the decisions of other school districts to grant charters to the "cyber" charter schools (hereafter cyber schools). Rather it is about the fundamental right of adversely affected School Districts to seek a judicial declaration of the existing state of the law relative to the Secretary of Education withholding state education subsidies from School Districts and paying those funds to cyber schools, i.e., whether this is deemed to be illegal under existing law.[2]
*14 As an initial matter, I emphatically disagree with the conclusion that this Court may not entertain claims in its original and in its appellate jurisdiction when the issues in each are separate and distinct. The Rules of Appellate Procedure do not provide that an original jurisdiction action may not be filed with a related appellate jurisdiction action, and the Court frequently has entertained petitions for review invoking both the Court's original and appellate jurisdiction. See, e.g., Werner v. Zazyczny, 545 Pa. 570, 681 A.2d 1331 (1996) (noting that petition for review filed in Commonwealth Court invoked original jurisdiction seeking a mandamus and also invoked appellate jurisdiction seeking review of alleged adjudication in termination of employee).[3] The Majority is correct that a party may not succeed in both original and appellate jurisdiction as to the same claim. However, because the question of the legality of the cyber schools may not be decided in a hearing before the Secretary, see Boyertown, Petitioners' claim in that regard is separate. The fact that the legislature has not expressly provided a procedure for challenging the legality of cyber schools does not mean that the Court may not judicially determine the issue. Rather, this is precisely the type of question that is properly raised and decided in a declaratory judgment action.
The Majority misstates and/or misconstrues the nature of Petitioners' action as an appeal from the grant of charters to cyber schools, and it summarily decides that because Petitioners did not grant the charters in question, they have no right to challenge their legal status. Petitioners, however, do not appeal the grant of charters to the cyber schools, and they recognize that the Charter School Law does not permit them to do so.[4] To the contrary, *15 they request the Court, inter alia, to declare that the Secretary has no authority to withhold state education subsidies from the School Districts and to pay the funds over to the cyber schools, which the School Districts contend are not authorized by the Charter School Law.
Petitioners assert that the School Districts and the Pennsylvania School Boards Association (PSBA) have a direct interest in this matter and that they possess standing to bring the action in their own names and on behalf of similarly situated School Districts.[5] The withholding of Petitioners' state education subsidies has impacted upon them in a substantial, immediate and direct way, and they properly argue that case law confers standing upon a party adversely affected by government action to seek remedy in the courts. As for the demurrer, Petitioners maintain that cyber schools are not genuine schools in the traditional "brick and mortar" school buildings with certified teachers and students who attend school each day in a school building or facility. Moreover, there is no authority in the Public School Code of 1949 (School Code), Act of March 10, 1949, P.L. 30, as amended, 24 P.S. §§ 1-101 27-2702, for creating these entities.
To possess standing to litigate an action, a party must demonstrate a substantial interest in the subject matter of the litigation, and that interest must be direct and immediate as opposed to being a remote consequence. See George v. Pennsylvania Public Utility Commission, 735 A.2d 1282 (Pa.Cmwlth.1999) (citing Ken R. ex rel. C.R. v. Arthur Z., 546 Pa. 49, 682 A.2d 1267 (1996)). The directness and immediacy requirements for standing depend upon the causal relationship between the injury or harm claimed and the action in question. Wm. Penn Parking Garage, Inc. v. City of Pittsburgh, 464 Pa. 168, 346 A.2d 269 (1975). See also Pennsylvania School Boards Association, Inc. v. Commonwealth Association of School Administrators, Teamsters Local 502, 696 A.2d 859 (Pa.Cmwlth.1997) (PSBA granted standing to sue on behalf of members). Petitioners filed their action in the Court's original and appellate jurisdiction after the Secretary decided to withhold subsidies and forwarded letters to the School Districts informing them of the action. Therefore, Petitioners have demonstrated interests that are substantial, direct and immediate, and assuming arguendo that PSBA lacks standing, which it does not under Pennsylvania School Boards Ass'n, Petitioners' action would proceed nonetheless. Accordingly, I would overrule Respondents' preliminary objection based on Petitioners' lack of standing.
The Declaratory Judgments Act, 42 Pa. C.S. §§ 75317541, provides an independent basis for Petitioners' action, and nothing in the Charter School Law or in this Court's decision in West Chester Area School District v. Collegium Charter School, 760 A.2d 452 (Pa.Cmwlth.2000), *16 forecloses Petitioners' right to seek redress in this Court.[6] In Bloomingdale's By Mail, Ltd. v. Department of Revenue, 130 Pa.Cmwlth. 190, 567 A.2d 773 (1989), aff'd per curiam, 527 Pa. 347, 591 A.2d 1047 (1991), the Court repeated the principle that "[t]he issuance of a declaratory judgment is a matter of judicial discretion which should only be exercised to illuminate an existing right, status or legal relation.... The Declaratory Judgments Act is broad in scope and is to be liberally construed and administered but is not without its limitation." Id. at 775. Furthermore, a case or controversy must exist or be imminent or inevitable before the Court may grant declaratory relief. Silo v. Ridge, 728 A.2d 394 (Pa.Cmwlth.1999). In Curtis v. Cleland, 122 Pa.Cmwlth. 328, 552 A.2d 316 (1988), the Court noted that the Declaratory Judgments Act is remedial in nature and that it was enacted to provide relief from uncertainty and to establish legal relationships. A declaratory judgment action may be filed to obtain a declaration of the state of existing law on a particular issue or scope of a governmental body's actions pursuant to statutory authority. P.J.S. v. Pennsylvania State Ethics Commission, 669 A.2d 1105 (Pa. Cmwlth.1996).
The precise relief sought here involves Petitioners' request for a declaration of the existing state of the law on a particular issue. They petition the Court to determine whether cyber schools lawfully exist under the Charter School Law and, if not, whether the Secretary may deduct education subsidies from the School Districts and pay the funds to an entity not authorized by law. Such a ruling by the Court is not foreclosed merely because Petitioners did not first appeal from the grant of the cyber charters, which they could not do. In any event, no administrative remedy is available for Petitioners to challenge the legality of cyber schools. See Boyertown. Because the declaration requested by Petitioners is not sought in a "proceeding involving an appeal from an order of a tribunal" in violation of 42 Pa.C.S. § 7541(c)(3), they unquestionably are entitled to proceed with their declaratory judgment action. Also see Delaware River Port Authority v. State Ethics Commission, 126 Pa.Cmwlth. 147, 558 A.2d 932 (1989) (declaratory judgment not precluded when petition for review did not constitute appeal from prior order).
Finally, the Court has repeatedly held that when ruling upon preliminary objections in the nature of a demurrer, the Court must accept and consider as true all well-pled facts in Petitioners' petition for review and all reasonable inferences that may be deduced from those facts and then decide whether the facts pled are legally sufficient to permit the case to go forward. See, e.g. Allegheny Sportsmen's League v. Ridge, 790 A.2d 350 (Pa.Cmwlth.2002); Sontag v. Ward, 789 A.2d 778 (Pa.Cmwlth. 2001); Nixon v. Commonwealth, 789 A.2d 376 (Pa.Cmwlth.2001). Similarly, in Baravordeh *17 v. Borough Council of Prospect Park, 706 A.2d 362 (Pa.Cmwlth.1998), the Court reiterated that all doubts must be resolved in favor of refusing to sustain the preliminary objections.
To reach the desired result, the Majority has refused to apply and to follow the required standard for reviewing preliminary objections in the nature of a demurrer. Petitioners' petition for review contains numerous well-pled facts which this Court is required to consider as true before it may decide that the pleading is legally insufficient to permit the case to go forward. In fact, the Majority readily concedes that it "cannot say that the General Assembly actually contemplated the creation of cyber schools when it enacted the Charter School Law," majority op. at 11.[7] The Majority, however, has proceeded to determine that any type of charter school is permissible, but that is not the appropriate standard. The Court is required to decide whether the law says with certainty that no relief is possible under Petitioners' factual averments. If the answer is no, then the inquiry ends, and the Court must overrule the demurrer. It is obvious from reading Petitioners' detailed factual averments that the Court cannot resolve the factual disputes on this record and say with certainty that Petitioners are not entitled to relief. See P.J.S.
Petitioners averred that cyber schools by their nature cannot satisfy requirements of the Charter School Law, and they argue that the legislature did not contemplate "virtual schools" when it enacted the law. Petitioners pleaded, inter alia, that cyber schools have no physical schools or classrooms for students to attend; they do not operate day schools as contemplated by the School Code; they function principally on the Internet through on-line curricula developed by others; they have no location or physical academic facilities and offer no opportunity for student attendance at a location or facility; they provide no proper supervision over student learning and progress or any mechanism for enforcing compulsory school attendance laws; they represent home schooling programs in violation of the School Code; and no law exists to authorize elementary and secondary schools to operate solely on-line. See requirements of Section 1715-A of the Charter School Law, 24 P.S. § 17-1715-A; Section 1716-A, 24 P.S. § 17-1716-A; Section 1717-A, 24 P.S. § 17-1717-A; Section 1718-A, 24 P.S. § 17-1718-A; Section 1719-A(11), 24 P.S. § 17-1719-A (11); Section 1728-A(a), 24 P.S. § 17-1728-A(a); and Section 1732-A, 24 P.S. § 17-1732-A.
Cyber schools cannot provide instruction "on the premises" of a charter school because they have no buildings or facilities in which to operate. Also the cyber school students do not attend a school for a minimum of 180 days or 900/990 hours of instruction to comply with Section 1715-A or with compulsory school attendance laws. Section 1327 of the School Code, 24 P.S. § 13-1327. They do not have teachers in a classroom who provide instruction or assume responsibility "at the school site," and they do not operate "in an existing public school building" or in part of an existing public school building or other suitable location. See Section 1702-A, 24 P.S. § 17-1702-A; Section 1715-A; and Section 1722-A, 24 P.S. § 17-1722-A. A careful review of the factual averments and the Charter School Law requirements *18 demonstrates that Petitioners have stated a cause of action entitling them to relief. I would thus overrule Respondents' preliminary objection based on standing and their demurrer and allow an answer to the petition for review or an appropriate motion for summary relief under Pa. R.A.P. 1532(b).
Judges McGINLEY and COHN join.
Concurring opinion by Judge PELLEGRINI.
I join in Parts I and II of the majority opinion.
NOTES
[1] This case was reassigned to the authoring judge on May 7, 2002.
[2] Act of March 10, 1949, P.L. 30, added by section 1 of the Act of June 19, 1997, P.L. 225, as amended, 24 P.S. §§ 17-1701-A to 17-1732-A.
[3] The following cyber schools were named as Respondents: Western PA Cyber Charter School, chartered by the Midland Borough School District; Commonwealth Cyber Charter School, chartered by the School District of Lancaster, but later dropped as a party; T.E.A.C.H. Charter School, a/k/a Einstein Academy, chartered by the Morrisville School District; and Pennsylvania Virtual Charter School, chartered by the Norristown Area School District. Other cyber schools were not named as Respondents because, according to Petitioners, they operate differently from the named cyber schools, and no subsidies have been withheld on their account from the school districts.
[4] Where it unclear whether a governmental determination is reviewable pursuant to this court's original or appellate jurisdiction, a petitioner may file a single petition for review seeking to invoke both the original and appellate jurisdiction of this court; however, the petitioner cannot be successful simultaneously on both jurisdictional theories. See 1 G. Ronald Darlington, et al., Pennsylvania Appellate Practice, 2d § 1502:11 (2001).
[5] 42 Pa.C.S. § 763. In general, section 763 gives this court exclusive jurisdiction over appeals from the final orders of government agencies.
[6] 42 Pa.C.S. § 761 (relating to this court's original jurisdiction).
[7] 2 Pa.C.S. § 504.
[8] See section 702 of the Administrative Agency Law, 2 Pa.C.S. § 702 (stating that any person aggrieved by an adjudication of a Commonwealth agency who has a direct interest in such adjudication shall have the right to appeal therefrom to the court vested with appellate jurisdiction).
[9] See 42 Pa.C.S. § 7541(c)(3) (stating that declaratory relief is not available with respect to any proceeding involving an appeal from an order of a tribunal); Pittsburgh v. Conley, 126 Pa.Cmwlth. 306, 559 A.2d 613 (1989) (stating that injunctive relief is not available to a litigant who has a statutory remedy); and DeHart v. Horn, 694 A.2d 16 (1997) (stating that mandamus is not available to a petitioner who has other adequate remedies).
[10] When ascertaining the intent of the General Assembly, we may consider the consequences of a particular interpretation. Section 1921(c)(6) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1921(c)(6).
[11] Ordinarily, having determined that Petitioners lack standing to challenge the legality of cyber schools, our analysis would end here. However, we recognize that this matter is of grave importance and that an expeditious resolution is necessary to prevent an interruption in the education of students enrolled in cyber schools. Thus, assuming arguendo that our supreme court would find that Petitioners do have standing to challenge the legality of cyber schools, we have decided to complete our analysis of the issues that Petitioners have raised in their petition for review.
[12] We note that this reading is consistent with other portions of section 1702-A of the Charter School Law that provide for the use of different and innovative teaching methods and for expanded choices in the types of educational opportunities available to parents and pupils. See 24 P.S. § 17-1702-A.
[13] To the degree that a computer screen might constitute a wall, the Charter School Law's prohibition against the display of religious objects and symbols would apply to a cyber school.
[1] The Court held in Boyertown that School Districts are entitled to notice and an opportunity to challenge the correctness of cyber school tuition invoices before the Secretary may withhold subsidies from the School Districts and pay over these funds to the cyber schools.
[2] Petitioners filed their petition for review after the Department of Education forwarded letters on and after June 1, 2001 to the School Districts stating that education subsidies would be withheld from those School Districts that refused to voluntarily pay tuition bills submitted by the cyber schools. The Secretary deducted $839,665 from numerous school districts after receiving documentation of unpaid invoices submitted by the Western PA Cyber Charter School.

The following cyber schools were named as Respondents: Western PA Cyber Charter School with principal offices in Midland was chartered by the Midland Borough School District; Commonwealth Cyber Charter School with principal offices in Lancaster was chartered by the School District of Lancaster, but because it did not commence operations the parties agreed that it be removed as a party; T.E.A.C.H. Charter School, a/k/a Einstein Academy Charter School, with principal offices in Jenkintown was chartered by the Morrisville School District; and Pennsylvania Virtual Charter School with principal offices in Norristown was chartered by the Norristown Area School District. The remaining cyber schools, SusQ-Cyber Charter School, 21st Century Cyber Charter School, Mid-western Regional Virtual Charter School and Pa. Learner's Online Regional Cyber Charter School, were not named as Respondents, according to Petitioners, because they operate differently from the named cyber schools and no subsidies have been withheld on their account from the school districts.
[3] See also Associated Wholesalers, Inc. v. Department of Revenue, 780 A.2d 759 (Pa. Cmwlth.2001) (ruling upon one count of petition for review appealing from denial of petition for different tax treatment and granting motion of parties to stay counts in original jurisdiction pending resolution of the issues in the appellate jurisdiction count); Turner v. Pennsylvania Public Utility Commission, 683 A.2d 942 (Pa.Cmwlth. 1996) (granting declaratory judgment in original jurisdiction as to the type of hearing required before removal of chief administrative law judge and holding that appeal from removal was premature); Lentz v. Department of Education, 98 Pa. Cmwlth. 167, 510 A.2d 922 (1986), aff'd per curiam, 514 Pa. 589, 526 A.2d 359 (1987) (granting summary judgment to Commonwealth parties on original jurisdiction count seeking declaration that certain employees were governed by civil service statutes rather than school provisions and affirming the State Civil Service Commission's decision on appellate jurisdiction count). Each of these cases was filed to a single docket number.
[4] Section 1717-A of the Charter School Law, 24 P.S. § 17-1717-A, relating to establishment of charter schools, provides in subsection (e)(5) that written notice of a school board's required action on a charter application shall be sent to the applicant, the Department and the State Charter School Appeal Board (Appeal Board) established pursuant to Section 1721-A, 24 P.S. § 17-1721-A; if the application is denied, the reasons for the denial shall be clearly stated in the written notice. Pursuant to Section 1717-A(i)(1), 24 P.S. § 17-1717-A(i)(1), the Appeal Board "shall have the exclusive review of an appeal by a charter school applicant, or by the board of trustees of an existing charter school, of a decision made by a local board of directors not to grant a charter as provided in this section." Section 1717-A(i)(2)-(5), 24 P.S. § 17-1717-A(i)(2)-(5), provides detailed procedures, including securing a substantial number of required signatures, for qualifying to appeal from a denial of a charter application. Nowhere in Section 1717-A is any provision made for an appeal of a grant of a charter application.
[5] Amicus Curiae Pennsylvania State Education Association supports Petitioners' arguments and states, among other things, that cyber schools can deliver instructional programs over the Internet to students who reside in any School District in the Commonwealth. If the cyber schools are entitled to receive payments from the School Districts pursuant to Section 1725-A(a)(2), (3), 24 P.S. § 17-1725-A(a)(2), (3), then every School District in the state would be required to make payments to one or more cyber schools. In any event, to sustain Respondents' preliminary objections, the Court must conclude that relevant case law is clear and free from doubt and that the facts pled are not legally sufficient to establish Petitioners' right to relief.
[6] Petitioners cite Franklin v. Gwinnett County Public Schools, 503 U.S. 60, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992), where the Supreme Court in examining whether a statute created a right of action stated that the court presumed the availability of all appropriate implied remedies unless Congress expressly indicated otherwise. Petitioners dispute the argument that when enacting the Charter School Law the legislature precluded all pre-existing judicial remedies that might be available to the School Districts to protect their receipt of state subsidies to operate their respective schools. Also compare Curtis v. Cleland, 122 Pa.Cmwlth. 328, 552 A.2d 316 (1988) (county commissioners not barred from pursuing declaratory judgment action to ascertain their legal status regarding disbursement of funds even though they failed to appeal court order requiring them to countersign checks in order to disburse the contested funds).
[7] Proposed legislation, if enacted, would confirm the Majority's concession. See pending legislation House Bill 1733, Section 2 (cyber schools do not fit within requirements of the Charter School Law for suitable physical facilities and provision of minimum number of days of hours of operation).